## 15701

### CITY OF GREENVILLE v. WASHINGTON AMERICAN LEAGUE BASEBALL CLUB ET AL.

(32 S. E. (2d), 777)

496

498

*Mr. J. LaRue Hinson* and *Mr. E. M. Blythe,* both of Greenville, S. C., Counsel for Appellants,

*Mr. A. C. Mann,* of Greenville, S. C., Counsel for Respondent,

January 11, 1945.

MR. ASSOCIATE JUSTICE FISHBURNE delivered the unanimous Opinion of the Court:

On February 25, 1938, the plaintiff leased by written instrument to Joseph C. Cambria, of Baltimore, a vacant lot in the City of Greenville, to be used and occupied for the playing of professional baseball. It was provided that the lease was to run for a period of five years from January 1, 1938, and at the option of the lessee, for a further term of three years, provided the conditions and all operating and lease arrangements proposed should be acceptable to the lessor. The lease contained, among others the following stipulations:

"2. It is expressly agreed and understood that the Lessee is to have the use of said property, rent free for said term; subject to the provisions and conditions hereinafter set out.

"3. The lessee is to grade the field, construct grandstands, fences and other necessary improvements on said plot of ground, and maintain same during the term of this lease at his own expense.

"4. Should professional League Baseball be discontinued, and not conducted for the full season during any year of this lease term, then the said lease shall be automatically ended and terminated at the option of the Lessor.

"5. The Lessee shall not have the right to sublet the said baseball park grounds and improvements to another for the purpose of operating a baseball club, or for incidental purposes in connection therewith except with the written consent and permission of the Lessor, and except as provided under Clause 7 below."

Immediately after the execution of the lease, Cambria, the lessee, went into possession of the premises and constructed thereon grandstands, bleachers and fences; and erected poles, upon the top of which were placed lights and reflectors so that baseball could be played at night as well as in the daytime.

The lessee owned a franchise in the South Atlantic League, and as a member thereof conducted and operated baseball games under his lease in the city of Greenville until November 27, 1940, when he transferred and assigned all of his right, title and interest in the lease to the Washington American League Baseball Club. The assignee accepted the assignment in writing, and assumed "all obligations, rights and privileges" provided in the lease. This transfer was assented to by the city of Greenville on November 29, 1940.

The Washington Club, as assignee, used the premises for professional baseball purposes until February 24, 1942, when it notified the plaintiff that it would not continue to operate the Greenville Baseball Franchise because under the law it could not play Sunday baseball in Greenville; it

therefore elected to terminate the lease. Thereafter it commenced the removal of the lights and reflectors which had been placed upon the baseball field by it and its predecessor, Mr. Cambria.

The lease contained no specific provision as to the ownership of the buildings erected on the premises, or the other necessary improvements placed thereon, upon the expiration of the leasehold. The relief sought by the plaintiff in this suit is that it be decreed to be the owner of the lights and reflectors affixed to and used on the playing field, and that an injunction issue permanently enjoining the defendant from removing the same.

The defendant admitted the execution and assignment of the lease, but alleged that the lighting equipment placed upon the property constituted trade fixtures; did not lose their character as personal property and chattels, and were, therefore, removable.

The cause was referred to the master, who decided the issue adversely to the contention of the defendant, and his report was affirmed by the County Judge.

No claim is made by appellant to the building, structures or improvements erected on the baseball park, such as grandstands, bleachers, club house, poles or fences. Appellant's contention that the lower Court was in error in granting injunctive relief against the removal of the lights and reflectors from the leased property, is the important question presented in this appeal. The issue is whether this equipment comes within the category of common-law fixtures, or whether they are trade fixtures, and as such are removable upon the termination of the lease.

It is the contention of the plaintiff that the parol testimony, most of which was introduced over objection, showed beyond question a prior contract, independent of the lease, entered into between the plaintiff and Cambria, the original lessee, which explicitly provided that not only

would all structures erected upon the baseball property revert to the city, but that the lighting equipment as well would become the property of the plaintiff upon the termination of the lease.

The uncontradicted testimony showed that the lights and reflectors were used by the defendant and the original lessee in the conduct and operation of night baseball. This testimony further showed that most of the baseball games played in the South Atlantic League at Greenville, were played at night, and that this would not have been possible without the use of the lights and reflectors in question.

Evidence offered by the plaintiff in support of the separate contract, was to the effect that shortly prior to the execution of the original lease, Mr. Whilden, president of the South Atlantic League, and Mr. Herring came to Greenville and interviewed Mayor McCullough and other members of city council for the purpose of obtaining a suitable lot to be used for the playing of professional baseball. They stated that they came as the representatives of Mr. Cambria; and they entered into negotiations with the city concerning the location of a playing field and the erection of necessary structures thereon. They wished to ascertain if the city would cooperate with them in the development of a baseball park and in the playing of professional baseball. These representatives were shown a plot of land, which they agreed was ideal for their purpose, and they stated that if the city would give the land free of rent, for the purpose of playing professional baseball, that they would build a grandstand, furnish necessary facilities, and provide and install lights—all of which would become the property of the municipality upon the termination of the lease. This the city agreed to do. After these negotiations and agreements had been entered into between the plaintiff and Messrs. Whilden and Herring, Mr. Cambria came to Greenville, continued the discussion of arrangements where his represen-

tatives had left off, and agreed to the location and the construction operations. None of this testimony was contradicted.

Mr. Dillard, the Clerk and Treasurer, said that he discussed the matter with Mr. Whilden, Mr. Herring, and Mr. Cambria, together and separately, on several occasions; that in the course of the discussion they talked about rent and the amount which would have to be spent to make the ground suitable for organized baseball; and all of these parties stated that they would have to build a grandstand, a fence, and install lights and other things in order to put the baseball field in proper condition. The playing of games at night was fully discussed, and this witness expressed the opinion that the business could not have been operated successfully without night games.

The evidence showed that 'he lights and reflectors, although easily detachable, wer( ' )tt to cross-arms on the top of poles embedded i; ? ⅃ around the ball park. Evidence for the de ens was to the effect that when the lease was assigned t' l.e Washington Club by Mr. Cambria, the Club als utained from Cambria by purchase the Greenville franchise, including all physical things connected with baseball, such as uniforms and equipment, and that the lights were included in the purchase price. However, the affirmative defense of *bona fide* purchaser for value without notice was not pleaded. Mr. Eynon, secretary and business manager of the Washington Club, testified that when the assignment of the lease was executed, nothing was said with reference to the ownership by the City of Greenville of the lights or any personal property. Nor did the defendant make any inquiry thereabout.

On February 16, 1942, the Washington Club, in a letter addressed to Mr. Kenneth Cass, a member of City Council, stated: "If we should decide not to continue, I will want to take everything that rightfully belongs to the

Washington Club, of course, leaving the grandstands and everything like that, bleachers, fence, etc., which should revert to the city in accordance with the lease. The lights, furniture and everything pertaining to the working apparatus to take care of the grounds belong, of course, to the Washington Club."

The appellant objected throughout to the admissibility of evidence tending to establish the separate agreement independent of the written lease—that the lights would become the property of the city upon the termination of the lease. The objections are based upon several grounds : First, that agency cannot be proved by the mere declarations of the agent; second, that even if it be assumed that Whilden and Herring were the representatives of Cambria, there was an entire absence of testimony tending to show that in making the alleged parol agreement, either Whilden or Herring was acting within the scope or apparent scope of his authority; and, third, such testimony should have been excluded because it varied and contradicted the terms of the written lease.

We may say in passing that Mr. Cambria, Mr. Whilden, and Mr. Herring did not testify in the case.

With reference to proof of agency, the general rule is well settled, of course, that the declarations of an agent alone as to his agency are insufficient to prove agency, but if there are other corroborating facts, agency, then becomes a question for the jury. His statements are admissible and competent as circumstances in connection with other competent evidence to prove the legal relationship of principal and agent. *Sturkie v. Commonwealth Life Insurance Co., of Louisville, Ky.,* 180 S. C., 177, 185 S. E., 541; *Andrews v. McDade,* 201 S. C., 24, 21 S. E. (2d), 202; *Powers v. Wheless,* 193 S. C., 364, 9 S. E. (2d), 129; *Broadway v. Jeffers,* 185 S. C., 523, 194 S. E., 642, 114 A. L. R., 1244.

The relationship of agency need not depend upon express appointment and acceptance, but may be, and frequently is, implied from the words and conduct of the parties and the circumstances of the particular case. *Moore v. Hardaway Contracting Co.*, 193 S. C., 299, 8 S. E. (2d), 511; *Mortgage & Acceptance Corporation v. Stewart*, 142 S. C., 375, 140 S. E., 804.

It is said in 1 Mechem on Agency, Sec. 261, Page 185: "* * * The existence of agency is a fact, and like other facts, may be proved by any evidence, traceable to the alleged principal, and having a legal tendency, to establish it. * * * The agency may be shown by conduct, by the relations and situation of the parties, by acts and declarations, by matters of omission as well as of commission, and, generally, by any fact or circumstance with which the alleged principal can be connected and having a legitimate tendency to establish that the person in question was his agent, for the performance of the act in controversy."

Mr. Mechem further says that for the purpose of proving agency, a wide range may often be properly given to the testimony, provided that which is offered has a real probative tendency toward the main question in issue, or in other words, legitimately tends to prove the fact of agency so that the jury may reasonably deduce from it that such agency existed. 2 Mechem, Sec. 261, Page 187.

But in order to be relevant the alleged principal must, in some way, directly or indirectly be connected with the circumstances. The agent must have assumed to represent the principal and to have performed the acts in his name and on his behalf.

We are unable to agree with the position so earnestly urged by appellant that the record is lacking in evidence from which the agency and authority of Whil-

den and Herring may reasonably be inferred. Mr. Whilden, the president of the South Atlantic League, which included Greenville and other cities, and Mr. Herring came to Greenville and discussed with the city officials the matter of procuring a site for a baseball park and stated to the officials that they represented Mr. Cambria. They inspected and approved an acceptable site, and stated without qualification that if the property could be obtained rent free, for the playing of professional baseball, they would install without expense to the city a grandstand, bleachers, fences and other necessary facilities and improvements, including lights, all of which upon the termination of the lease would become the property of the city.

It appears that these discussions were carried on from time to time, and that various officials representing the city took part. Mr. Whilden and Mr. Herring were there also in company with Mr. Cambria, and the proposed arrangements were discussed with all three of them. And, according to the testimony of Mr. Cass, Mr. Cambria agreed to the location which Whilden and Herring had selected, agreed to the operation, and then executed the lease, after appropriating and accepting the benefit of the work performed by his representatives on his behalf.

We think this evidence was admissible, and has a legal tendency to prove the fact of agency. Not only agency, but ratification on the part of Mr. Cambria. It may reasonably be inferred that he had knowledge of all the material facts surrounding the transaction he ratified, even if we should assume that the acts of Whilden and Herring were unauthorized in the first instance.

In the case of *Willis v. Hammond*, 41 S. C., 153, 19 S. E., 310, 314, the Court said: "While it is a general rule that a contract in writing, complete in all its terms, draws into it all parol contracts preceding it, yet, if it fails to state the consideration; if it uses terms that need explanation to

be understood and applied, or if it is only a part of a general whole, it is perfectly competent to supply all these missing qualities by testimony giving all the precedent agreements of the parties. *Knight v. Knotts,* 8 Rich. 35; *Rapley v. Klugh* [40 S. C. 134], 18 S. E., 680; *McGrath [& Bynum] v. Barnes,* 13 S. C., 228 [36 Am. Rep. 687]; *Kaphan v. Ryan,* 16 S. C. [352], 357, 358."

Also, in the case of *Ashe v. Carolina & N. W. Ry. Co.,* 65 S. C., 134, 43 S. E., 393, 394, we find: "When the written evidence of the contract does not contain all the terms of the transaction between the parties, parol evidence (not contradicting or varying the writing) is admissible for the purpose of showing a contemporaneous independent agreement entered into between the parties."

In our opinion, the testimony tending to establish the independent and separate agreement with reference to the ultimate disposition of the lights and reflectors was admissible.

Where the language of a contract is susceptible of more than one interpretation, but not otherwise, the Court, in ascertaining the intention of the parties, may and should consider and construe the contract in the light of the situation and relation of the parties and the circumstances surrounding them at the time of the making of the contract, the nature and situation of the subject-matter, and the apparent purpose of making the agreement. *Sanders v. General Motors Acceptance Corp.,* 180 S. C., 138, 185 S. E., 180; *Breedin v. Smith,* 126 S. C., 346, 120 S. E., 64; *Chatfield-Woods Co. v. Harley,* 124 S. C., 280, 117 S. E., 539.

We think it clear from a casual inspection of the written contract that it is susceptible of more than one construction, and also that the parties did not put all of their engagements into writing showing the extent of their commitments. There is the obvious omission

of any written provision concerning the ultimate ownership of the buildings and improvements placed on the property when the lease should expire. Under such circumstances, it was entirely proper for the lower Court to examine the entire contract and consider not only the relationship of the parties, but their connection with the subject-matter and the circumstances under which the contract was signed, in order to ascertain the intention of the parties.

In addition to what has just been said, there is another principle which is applicable here. The rule excluding extrinsic evidence which is offered for the purpose of varying or contradicting the terms of a written instrument, does not preclude the introduction of testimony which has no effect upon the terms of a contract, and which is designed to show a collateral parol agreement between the parties—for example, a contemporaneous oral agreement on which the document is silent, which was the inducement and consideration for the written contract. 2 Jones on Evidence, Sec. 439, Page 836.

The defendant, as assignee, as already stated, did not interpose the affirmative plea of bona fide purchaser for value without notice, but even if it had, the plea, in our opinion, could not have prevailed.

The case of *Berry v. Marion County Lumber Co.,* 108 S. C., 108, 93 S. E., 328, Ann. Cas., 1918-E, 877, is peculiarly apposite in its facts and the legal principles involved, to the case at bar. In that case the Court dealt with the rights of an assignee of a timber contract with reference to the time when the cutting of the timber should commence. As to this, the timber contract was silent. It was held, among other things, that the terms of the contract could not be varied by parol evidence, but that the circumstances surrounding the parties at the time the contract was made could be detailed, and that evidence was admissible and

competent to prove an independent agreement not embodied in and not varying the written contract. It was further stated that it was incumbent upon the purchaser (the assignee) to ascertain the facts and circumstances of the situation of the original parties when he purchased; and that the purchaser was charged with knowledge of a proper legal construction of the timber contract as to the time when the cutting of the timber should commence under the contract.

Furthermore, if there are circumstances sufficient to put the party upon inquiry, he is held to have notice of everything which that inquiry, properly conducted, would certainly disclose. *Kirton v. Howard,* 137 S. C., 11, 134 S. E., 859; *Norris v. Greenville, S. & A. R. Co.,* 111 S. C., 322, 97 S. E., 848; *Black v. Childs,* 14 S. C., 312.

It seems to us to be entirely clear that the provisions of the written lease standing alone, show that the inducement and consideration therefor on the part of the City of Greenville, were that a permanent baseball playing field, with all necessary facilities and improvements, would be developed and established in the city; and that it gave the baseball site for a term of years, free of rent charge in order to effect this evident object and intention. We gather this from the instrument, without the aid of parol evidence to establish any independent agreement; and the defendant as assignee, is charged with this legal construction of the contract. Parol evidence was necessary, it is true, to show what properly came within the term "other necessary improvements." But it was entirely proper to introduce testimony for this purpose in order to show that lights for the playing of baseball at night were in the minds of the contracting parties.

In fact, under a reasonable construction of this lease, and the explanatory testimony, the removal of the lights from the playing field would be as disastrous to the operation of the baseball business as removal of the grandstands and

bleachers, or even more so, for without the lights, no games could be played at night.

There is no provision in the contract that the city should pay for the "other necessary improvements". The object of the annexation and installation of the lights as well as the erection of the other structures, were evidently for the substantial and permanent improvement of the freehold. And the lessee (Mr. Cambria) agreed to construct, pay for, and maintain these specified improvements in lieu of rent charge. The defendant, as assignee, became fixed with notice of the express and implied covenants of the lease, and took possession of the property subject to the performance of the conditions and obligations running with the land, which by the terms of the lease, the lessee was bound to perform.

Although there is no specific reference in the lease as to the ultimate ownership of the grandstands, bleachers and fences, the defendant under its own construction, by the letter hereinabove referred to, readily conceded that these structures upon the termination of the lease became the property of the city. But there is nothing in the terms of the written contract which could in any way reasonably differentiate between the structures referred to and the lights which are in controversy.

If this controversy were between the landlord and the original tenant (Mr. Cambria), we would have no hesitation in holding what should be the legal disposition under the lease of the structures and lights. Irrespective of the independent agreement dealing with the ultimate ownership of the improvements placed upon the property, we think, as already indicated, that the written lease itself disposes of the question; and as the transaction of assignment here under review places the assignee in the same relationship to the lessor as was occupied by the lessee, our construction is conclusive against the assignee.

The contention is made that everything placed upon the baseball site in the way of buildings and lights come within the classification of trade fixtures.

An important exception to the general rule of the common law, that whatever is once annexed to the freehold becomes part of it and cannot afterward be removed except by him who is entitled to the inheritance, exists in the case of structures erected or chattels annexed for the purpose of trade or manufacture. It has been said that the underlying reason why property placed on leased premises by the tenant for purposes of trade is regarded as personal rather than real is based upon the rule that the law implies an agreement that it shall remain personal property from the fact that the lessor contributed nothing thereto and should not be enriched at the expense of his tenant when it was placed upon the real estate of the landlord with his consent. The question whether particular structures or articles are removable as trade fixtures depends solely upon whether they are designed for the purpose of trade; and this turns on the intention with which they were affixed to the realty; and not upon the character or mode of the physical annexation to the realty.

Hence, it may be said that what constitutes a trade fixture depends upon the facts of the particular case and that this question is usually a mixed question of law and fact for the jury. So far as the question of the tenant's right to remove fixtures is governed by the express provisions of the lease, however, it is a question of law. *Planter's Bank v. Lummus Cotton Gin Co.*, 132 S. C., 16, 128 S. E., 876, 41 A. L. R., 592; *Hurst v. J. D. Craig Furniture Co.*, 95 S. C., 221, 78 S. E., 960; 22 Am. Jur., Sec. 61, Page 775; 36 C. J. S., Sec. 38, Page 973; *Saye v. Hill*, 100 S. C., 21, 84 S. E., 307.

The respondent also takes the position that the lease itself, fairly construed, authorizes the definite conclusion that

it was the intention of the parties that the improvements, including lighting equipment, would remain on the premises and become the property of the city upon the termination of the lease, and that the defendant, as assignee, was charged with notice of this purpose and design.

It is said in 36 C. J. S., Fixtures, § 15, page 929:

"Unless qualified by other provisions, a provision in the lease that the lessee shall make improvements of a certain character is ordinarily construed as precluding him from removing them at the end of the term, it being presumed that such a provision is intended to benefit the lessor, and no such benefit accruing to him if the improvements are removable." And see *Roanoke Marble & Granite Co. v. Standard Gas & Oil Supply Co.*, 155 Va., 249, 154 S. E., 518.

The lease expressly provides that the lessee is to have the use of the property rent free, subject to certain conditions immediately enumerated. These conditions obligated the lessee to grade the field, construct grandstands, fences and other necessary improvements on the leased lot, and to maintain such improvements during the term of the lease, at his own expense.

Section 5 of the lease prohibited the lessee from subletting the baseball park and improvements to any other person except with the written consent and permission of the lessor.

And in Section 7 (not heretofore quoted), it is provided: "It is distinctly understood and agreed by and between the Lessor and Lessee that the Lessee is to permit the use of said baseball park for public gatherings, or for athletic contests, baseball or otherwise, during such times as the said park or playing ground may not be needed or in use by the Lessee. And the charges made by the Lessee to such party or parties using said premises, baseball park, grandstand, and other needed facilities placed on said plot of ground by the Lessee, shall be only sufficient to take care of the nec-

essary costs of lighting, maintenance, insurance and repair of the improvements thereon, and the placing of the playing field in as good condition as before such use. The Lessee is ·to cooperate with the Lessor in the matter of permitting such use of said ball park, and at the Lessor's request is to cooperate with other baseball clubs, high schools, American Legion or others in permitting the use of said park and improvements for athletic contests or other proper use of said premises. Provided, however, that when said field is being used for games by the local baseball club owned and operated by the Lessee, the Lessee shall not be under any obligation to permit others to use the field and park, but when the local baseball club conducted by the Lessee is away from home, or is not otherwise using the field and improvements thereon, same shall be available for such other use on the payment of the nominal fee and charge for the necessary expenses and repair as above set forth."

And in Section 9 of the provision is incorporated that violation on the part of the lessee of any of the terms, provisions or conditions of the lease will entitle the lessor to terminate it.

It is plain that while the improvements to be placed upon the property were to be made at the lessee's own expense, they were not solely for his own use and benefit as trade fixtures. The plaintiff was to forego the collection of rent, but in consideration of this concession, the lessee obligated himself as a condition precedent, to make improvements of a certain specified character and to maintain them at his own expense during the life of the lease. It is presumed under these circumstances that such improvements were not removable, because such an obligatory requirement for the construction of the improvements will be presumed for the benefit of the lessor.

It was held in *Saye v. Hill,* 100 S. C., 21, 84 S. E., 307, that where a structure is placed upon land—not to promote

the convenient use of the land, but to be used for some temporary purpose, external of the land, and the land is used only as a foundation, because some foundation is necessary for the business, then the structure and its belongings are not fixtures. Also see *Hughes v. Edisto Cypress Shingle Co.,* 11 S. C., 1, 28 S. E., 2.

In this case, the inference is inescapable that the improvements placed upon the selected baseball site were erected there to promote and establish the convenient use of that particular site, for the playing of professional baseball. The land was not used simply as a foundation because some foundation was necessary for the business. What was done there was not in any sense external to the land, and the conclusion would follow that the structures and improvements placed thereon did become fixtures, in the absence of any agreement to the contrary.

In our opinion, under the particular facts in this case, the lights and reflectors were erected as permanent improvements to the real estate, and the judgment of the county court should be sustained.

Judgment affirmed.

MR. CHIEF JUSTICE BAKER and MESSRS. ASSOCIATE JUSTICES STUKES, TAYLOR and OXNER concur.