### 21312

Thompson S. BAKER, G. W. Botts, W. J. Bowen, Robert P. Crisp, James Fentress, John A. Gilliland, William S. Woods, James H. Winston, W. W. Munnerlyn, and J. P. Thornton, as Trustees of Barnett Mortgage Trust, and Barnett-Winston Investment Trust, Respondents, v. Cedarwood Associates, Terracorp, Inc., Chicago Title Insurance Company, Cablecolor of Columbia, Inc., O'Neal Plumbing Company, United States Aluminum and Steel Highway Products Corporation, Thomas Climatic Control, Inc., Richtex Corporation, PPG Industries, Inc., W. T. Brannen, d/b/a Master Construction Co., Inc., C. L. Fisher Iron Works, Inc., Binnings Building Products, a division of National Gypsum Company, Geneva Construction Co., Inc., and Samuel McLean Construction Company, Scott M. Waldron, Vermelle Roland Fagan, Individually and as Executrix of the Estate of Wylie H. Fagan, L. G. Funderburk, Herbert L. Benson, Jr., T. H. Casey, Equitable Leasing Corp., Marsh Furniture Company, Inc. and Coronet Industries, Inc., Of which EQUITABLE LEASING CORP., Appellant.

(271 S. E. (2d) 596)

*Thomas E. McCutchen* and *Herbert W. Hamilton,* of *Whaley, McCutchen & Blanton,* Columbia, *for appellant.*

*Roy D. Bates,* of *Marchant, Bates, Todd & Barber,* Columbia, *for respondents.*

October 9, 1980.

LEWIS, Chief Justice:

This appeal concerns a dispute between two lending institutions as to the title of appliances. Equitable prevailed before the special master. The lower court judge reversed, holding that the contractor who sold the appliances to Equitable never owned the property; thus negating the validity of Equitable's title. The numerous exceptions raise the primary question of title to the appliances used and to be used in the apartment complex.

Terracorp, the owner of some 19.8 acres in Richland County, acquired a three and a half million dollar loan from Barnett for the construction of apartments. Mr. Waldron negotiated the arrangement for Terracorp. At the time of the undertaking, he was its president; however, several months later, he bought out the other shareholders of Terracorp and thereby also became its sole shareholder. In return, Terracorp gave a mortgage and a security interest to Barnett. The mortgage, which comprises their security agreement, and the financing statement were filed.

Geneva Construction Company, which was wholly owned by Mr. Waldron at that time, was hired by Terracorp to accomplish the construction of the project. A copy of this contract was not placed into evidence. The only direct evidence of the terms of the construction contract is the testimony of Mr. Waldron. He indicated that Geneva was to be paid cost plus an annual profit of $50,000.00. In lieu of a performance bond to insure completion of the construction, Chicago Title Insurance Company (CTI) was used to control the disbursement of the mortgagee's loan. As a result,

a written agreement was entered between CTI, Terracorp and Geneva. The purpose section of the agreement, in pertinent part, provides:

This agreement is only to enable CTI to perform its obligations to the Mortgagee under its Title Insurance Policy and the Related Agreement and to provide to CTI protection and indemnification from loss in so doing. In consideration of CTI making and signing the Related Agreement as aforesaid, Owner and Contractor do covenant, agree and obligate themselves as hereinafter set forth.

Mr. Waldron testified that this pay out plan was to acquire lien free construction and not to acquire title for someone other than Geneva.

The appliances were ordered by Mr. Waldron for Geneva and a promissory note was given at that time. The appliances were delivered to a warehouse controlled by Geneva or held in the supplier's warehouse and identified to the project. The supplier's secretary-treasurer indicated that they sold the goods to Geneva and looked to it for payment. Actual payment for appliances delivered prior to May 25, 1973 was accomplished pursuant to the aforementioned disbursing agreement whereby the contractor paid for the appliances on checks from CTI out of loan funds totaling about $124,000.00 advanced by Barnett. All the drafts were annotated "charge to the account of Terracorp, Inc." As to appliances delivered after May 25, 1973, Geneva gave the appliance supplier a note for $75,000.00.

As construction of the facility progressed, it become obvious that because of escalating building costs, insufficient funds were available from the loan to complete the project. Barnett was aware of this inadequacy. Despite a guarantee from CTI for funds in excess of the original amount of the loan from Barnett if the loan was insufficient to finish the project, additional funds were not forthcoming. Geneva paid for numerous items used in the construction and at the

time of the sale to Equitable, payments to the contractor were at least $300,000.00 in arrears.

Barnett threatened foreclosure because of delinquent interest payments by Terracorp. Mr. Waldron negotiated a "sale and leaseback arrangement", whereby the appliances previously purchased for use in the project were sold to Equitable Leasing for $150,000.00 and rented for use by Cedarwood Apartments, the new owner. At the time of the sale, appliances had been installed in only a few apartments and they had been rented by the new landowner. Two-thirds of this money was used to pay the interest expense owed by Terracorp to Barnett and the remainder went to Geneva. Barnett was aware of the source of the funds. These monies forestalled the eventual foreclosure by Barnett. Since the sale, Equitable has maintained the insurance and paid the personal property taxes on the appliances. This action ensued as a result of Barnett initiating foreclosure proceedings.

Initially, the appellant argues the lower court judge erred by finding the appliances never belonged to Geneva. In reaching his conclusion, the judge reasoned that the disbursements were not in the nature of progress payments, but rather amounted to a purchase by the owner, Terracorp. We disagree. While the furnishing of monies by Terracorp to acquire a majority of the appliances may be sufficient to establish some beneficial interest to Terracorp, under the facts of this case, it is insufficient to establish title in Geneva.

Prior to resolution of the question of title, it is instructive to point out the nature of Barnett's security interest. The mortgage between Barnett and Terracorp is the security agreement and is therefore controlling with regard to the nature of the interest granted to Barnett. It provides:

(ii) TOGETHER with all buildings, structures, and improvements of every nature whatsoever now or hereafter situated on the land, and all fixtures, machinery equipment

and other personal property of every nature whatsoever now or hereafter owned by the Mortgagor and located in, on, or used or intended to be used in connection with or with the operation of the Land, buildings, structures or other improvements. . . .

The only reasonable interpretation of the nature of the interest granted to the respondent is that the property in question must be both (1) owned by Terracorp and (2) used or intended to be used on the project.

We note in passing that an interest less than complete ownership is attachable under Article IX of the Commercial Code. Section 36-9-204, South Carolina Code, 1976, requires only that the debtor have rights in the collateral. *Nasco Equipment Co. v. Mason,* 291 N. C. 145, 229 S. E. (2d) 278. *See* 3 ULA Section 9-204, page 103. However, because the agreement of the parties was only to the superior interest of ownership, our focus must be accordingly narrowed.

It is well settled that where the circuit judge and the special master are in disagreement on a finding of fact, this Court may make findings in accordance with its own views of the preponderance or the greater weight of the evidence. *Price v. Derrick,* 262 S. C. 341, 204 S. E. (2d) 389. With this premise in mind, we consider the evidence.

As heretofore indicated, the actual construction contract was not placed into evidence. The uncontradicted testimony of Mr. Waldron concerning the terms of the contract was that Geneva, the contractor, was to be paid its cost plus an annual fee and that the appliances were purchased for Geneva.

Despite Barnett's contention otherwise, the disbursing agreement, standing alone, sheds little, if any, light on the contractual intent of the parties. The agreement itself reflects the sole purpose of enabling CTI to perform its obli-

gations. Finally, the only testimony as to the purpose of this payment system indicates that its purpose was for other than acquiring title for Terracorp.

The appliances were delivered to Geneva's warehouse or held for Geneva's use by the supplier until their installation into the project. We have previously held that ordinarily, one in possession of personal property is presumed to be the owner and one purchasing such personal property is required to use only reasonable diligence to ascertain if there are any defects in the title thereto. *Russell Willis, Inc. v. Page,* 213 S. C. 156, 48 S. E. (2d) 627; *Clanton's Auto Auction Sales, Inc. v. Harvin,* 238 S. C. 352, 120 S. E. (2d) 237. Equitable received written representations from Geneva and Cedarwood as to the title of the goods being in Geneva. In addition to actual possession off the job site, Equitable has paid the insurance and taxes on the property in question while the record reflects no acts indicative of ownership on the part of Terracorp.

Based on these facts, we hold the preponderance of the evidence indicates that it was the intent of the parties that ownership of the appliances be not in Terracorp, but rather were the property of the contractor upon their purchase from the supplier.

Because a contractually ambiguous situation was created, we have also given great weight to the conduct of the parties in reaching our conclusion in this matter. *See Langston v. Niles,* 265 S. C. 445, 219 S. E. (2d) 829. We construe the pay-out system not to place title in Terracorp, but rather to be in the nature of progress payments. While the furnishing of monies by Terracorp to acquire a majority of the appliances may be sufficient to establish a beneficial interest in Terracorp, *See* 76 Am. Jur. (2d) *Trusts,* § 206, p. 436, it is insufficient under the facts of this case to result in ownership by Terracorp. It follows that Barnett had no prior perfected security interest in the appliances sold to Equitable.

However, with regard to the appliances installed in apartments which were rented prior to the sale to Equitable, a different situation is presented.

Unless provided otherwise by contract, materials furnished by the builder generally remain his property until affixed to the owner's land or delivered to, and accepted by him as his property. . . . 17A C. J. S. *Contracts,* § 516, p. 937.

It is clear that by installing the appliances, turning them over to the owner and allowing occupancy by tenants, the contractor had relinquished the ownership rights it previously enjoyed. As such, it had no ownership rights to convey to Equitable.

In an effort to overcome the finding that Terracorp never owned the appliances, Barnett argues that the corporations involved are so intermingled and controlled by Mr. Waldron as to be his *alter-ego*. Therefore, Barnett asserts that the corporate veils should be pierced in such a manner so as to construe Waldron as the 'owner" of the appliances and to hold Barnett had a prior perfected security interest in the goods "owned" by Waldron. The special master and the lower court judge agreed that Waldron ignored the distinctions of corporateness; however, only the special judge applied the doctrine to subordinate the interest of Equitable. In so doing, he erred.

We have previously recognized that the corporate fiction may be disregarded in the appropriate case. *Parker Peanut Company v. Felder,* 200 S. C. 203, 20 S. E. (2d) 716. However, "piercing the corporate veil" is not a doctrine to be applied without substantial reflection.

. . . different legal corporations usually are regarded as distinct legal entities, and the instrumentality rule should be invoked only with mature consideration and caution. According to many decisions it is not sufficient merely to show

that one corporaton is the adjunct or instrumentality of another but it must further appear that the retention of separate corporate personalities would promote fraud, wrong, or injustice or contravene public policy. 18 C. J. S. *Corporations,* § 7, p. 384.

We have been cited to no case where the doctrine ■ has been applied to subordinate the interest of a third party to that of a creditor. While we do not reject such use of the doctrine in the appropriate case, we hold its application in this case is not warranted.

The record does not show that Equitable either participated in the intermingling by Mr. Waldron or should have known of the nature of his activities so as to justify a finding that Equitable perpetrated a fraud or some other wrongdoing with regard to Barnett. The special judge found that sufficient facts were known to Equitable so as to require inquiry as to the nature of the interest claimed by Barnett. However, his reasoning overlooks the fact that Barnett had placed the public on notice, by virtue of recording its security agreement, of the nature of its limited interest. We therefore hold that the application of the doctrine to disregard the corporate entities involved in order to subordinate Equitable's claim is inappropriate. We intimate no opinion as to application of the doctrne to Mr. Waldron by Barnett.

The final disposition as calculated by the master is adopted with the exception that Equitable is not entitled to the value of the appliances installed in apartments which had been surrendered to the landowner prior to Geneva's sale to Equitable.

Reversed and remanded for entry of judgment in accordance with the foregoing views.

LITTLEJOHN, NESS, GREGORY and HARWELL, JJ., concur.