**In re JOHN J. ORR & SONS, INC., Debtor.**

**Bankruptcy No. 8000911.**

United States Bankruptcy Court, D. Rhode Island.

Sept. 2, 1982.

Gordon P. Cleary, Vetter & White, Inc., Providence, R. I., for Toplis & Harding, Inc.

Louis A. Geremia, Quinn, Cuzzone, Geremia & Pennacchia, Providence, R. I., for debtor.

## DECISION AND ORDER DISALLOWING CLAIM

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

Heard on December 7, 1981, on the Defendant's objection to the claim of Toplis (subrogee of Zurbach) in the amount of $15,997.68. The issue is whether Toplis has established the existence of a bailment relationship between Zurbach and the Debtor, so as to render the Debtor liable for damage to Zurbach's property while in storage in the Port of Providence.

The relevant facts developed at the hearing are as follows: On March 27, 1980, Marubeni America Corporation shipped 33 coils of cold rolled sheet steel from Higashiharima, Japan to Providence, Rhode Island aboard the S. S. Sun Clover. The coils, which were wrapped in waterproof paper and covered by banded steel envelopes, arrived in Providence on May 14, 1980, in good condition. John J. Orr & Sons, Inc., the Debtor in this case,[1] was hired to provide stevedoring services, and under the direction of the Providence Port Authority, it unloaded the Sun Clover and placed the steel coils in transit storage shed No. 3.

Zurbach Steel Corporation, the purchaser of the steel, picked up the 33 coils by truck from the Port between May and July 1980. Zurbach's drivers noted at the time of pickup that the packing on the coils was wet and rusty, and that one coil was "sitting in water." (Plaintiff Exh. B1–16). When Zurbach employees eventually unpacked the coils, they noted that the steel had sustained severe rust damage.

Zurbach sent notice of rejection of the damaged coils to Marubeni and eventually sold the steel as scrap metal. Toplis & Harding, Inc., Marubeni's insurer, reimbursed Zurbach for the damaged goods and filed its proof of claim against Orr in the amount of $15,997.68.

The Debtor objects to the allowance of the claim on the ground that it is not responsible for any damage to goods or merchandise occurring while in storage. Toplis contends that Orr is liable as bailee of the goods during the time the damage occurred, arguing that the following factors establish a bailment relationship between the Debtor and Zurbach: (1) Orr physically stored the 33 coils in the transit shed where the damage occurred; (2) Orr was the only stevedoring operator at the Port at the time in question, and thus the coils could not be moved without the Debtor's participation; (3) Orr kept the only records concerning where various goods were stored, and customers such as Zurbach were required to inquire of Orr as to where their merchandise was located; (4) customers could not obtain possession or custody of goods until receiving a delivery ticket from Orr.

Toplis' proof of claim, standing alone, constitutes prima facie evidence of the validity and amount of the claim, pursuant to Bankruptcy Rule 301(b) and Section 502(a) of the Bankruptcy Code,[2] but the evidence introduced at the hearing raises substantial questions of fact as to the existence of a bailment; accordingly, Toplis

1. John J. Orr & Sons, Inc. filed a Chapter 11 petition for reorganization on December 2, 1980.

2. Rule 301. *Proof of claim*
   . . . .
   (b) *Evidentiary Effect.* A proof of claim executed and filed in accordance with these

rules shall constitute prima facie evidence of the validity and amount of the claim.
   § 502. *Allowance of claims or interest.*
   (a) A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, . . . objects.

**876**

bears the ultimate burden of proving its claim. 3 Collier on Bankruptcy ¶ 502.01 (15th edition).[3]

■ Based upon the record before it, the Court is not satisfied that a bailment relationship existed between Orr and Zurbach. The testimony indicates only that the Debtor was hired to "offload" goods and merchandise, and thereafter to deposit the shipment at a location designated by the Port Director. There is no evidence that the Debtor had any duty to maintain, inspect, periodically check, or guard off-loaded property. Neither Marubeni nor Zurbach had contracted with Orr to perform such services, and the Debtor cannot reasonably be expected to perform such services in the absence of an agreement. See generally 8 C.J.S. *Bailments* 386. There is no evidence that Orr remained in control of the steel once it was placed inside transit shed No. 3.

■ Even if a bailment did exist between Zurbach & Orr, however, it has not been alleged or demonstrated that the Debtor was in breach of any duty or was negligent in any respect.[4] The evidence is that the Debtor knew that the shed had a history of routine maintenance repairs, but there is no indication that Orr knew or should have known that the shed was in disrepair, or that the steel would be exposed to water. Transit shed No. 3 was known as "one of the best storage areas on the coast," according to Thomas O'Rourke, the assistant to Orr's president, and just several months prior to storing the coils in question, Orr had placed similar stock in shed No. 3 for Zurbach, without complaint of water damage.

Based upon the law applicable to the facts in this matter, the claim of Toplis & Harding, Inc., in the amount of $15,997.68 is disallowed. Enter order accordingly.

---

3. "But once the Trustee, as objector, has introduced evidence as to the invalidity of the claim ... or as to any affirmative defense going to the allowability of the claim, it would seem that the burden rests on the claimant to introduce rebutting evidence for it is the claimant's burden of ultimate persuasion."

3 Collier on Bankruptcy ¶ 502.01 (15th Edition) 502–19.

4. Res ipsa loquitur is not available to Toplis on the present facts.