In re SOUTH ATLANTIC PACKERS
ASSOCIATION, INC., Debtor.

Bankruptcy No. 81–01417.

United States Bankruptcy Court,
D. South Carolina.

Feb. 28, 1983.

Frank A. Graham, Jr., Columbia, S.C., for creditor.

Robert F. Anderson, Columbia, S.C., for trustee.

**1.** Further reference to the Bankruptcy Code of 1978 will omit the identically numbered sections of Title 11, United States Code.

ORDER

J. BRATTON DAVIS, Bankruptcy Judge.

This matter comes before the court on the trustee's objection to the proof of claim (No. 57) filed by Crepaco, Inc. (Crepaco) as a secured claim.

FACTS

On April 1, 1981, Crepaco contracted to sell South Atlantic Packers Association, Inc. (the debtor) a refrigeration compressor, a motor, a condenser, wiring, piping and controls (the collateral) which, on April 16, 1981, Crepaco began delivering and installing on the debtor's leased premises (the premises). Installation and delivery was completed on September 25, 1981.

In connection with these transactions Crepaco, on September 28, 1981, filed a financing statement in the office of the Secretary of State of South Carolina and in the office of the Register of Mesne Conveyance of Lexington County. In drafting the financing statements Crepaco incorrectly placed its name in the box labeled "Debtor" and the debtor's name in the box labeled "Secured Party"; but before the statements were filed, Crepaco corrected the mistakes by scratching out the printed words "Debtor" and "Secured Party" and by writing "Secured Party" above its name and "Debtor" above the debtor's name.

The debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code (11 U.S.C. § 701, *et seq.*)[1] on October 1, 1981, and a trustee of the debtor estate was appointed pursuant to § 702.

Sometime thereafter, the trustee released to the landlord the debtor's premises—with the collateral still attached. Crepaco claims that it received no notice of the release—a fact which the trustee does not deny.

Crepaco filed the disputed proof of claim under § 501(a)[2] listing Crepaco as a *secured* creditor for $20,625.42 (Claim No. 57), the amount owed on the collateral.

**2.** § 501(a): A creditor or an indenture trustee may file a proof of claim. An equity security holder may file a proof of interest.

Thereafter, the trustee, pursuant to § 502(a)[3], filed an objection to Crepaco's proof of claim, stating that Crepaco should be classified as a general, *unsecured* creditor for the claimed amount. The trustee argues that, because Crepaco's financing statement contains a material mistake which failed to put him on notice of Crepaco's claim, Crepaco has an unperfected security interest. The trustee also posits that the collateral, having become a fixture, cannot be reached because the premises were abandoned to the landlord, thus, is no longer property of the debtor estate.

In any event, asserts the trustee, the perfection of Crepaco's security interest is a voidable transfer under § 547(b).

Crepaco claims that the financing statements are not seriously misleading because they were corrected and recorded before the debtor's bankruptcy petition was filed. Crepaco also argues that it has a perfected purchase-money security interest securing its claim giving it the rank of a secured claim—ahead of the trustee's claim to the collateral which did not become a fixture on the abandoned premises.

## ISSUES

The issues are, first, whether Crepaco's claim against the debtor is secured or unsecured, and, second, whether the security interest, if perfected, is voidable by the trustee under § 547(b). In resolving the issues, the court must face the threshold problems of (1) whether the financing statements contained seriously misleading mistakes, (2) whether the collateral became fixtures, and (3) when the attachment of the security interest occurred.

## MEMORANDUM AND CONCLUSION

### 1

The trustee first contends that Crepaco's financing statements contain errors which are seriously misleading, thus, not providing adequate notice to judgment creditors such as he.

The rule as to errors in financing statements is stated in S.C.Code[4] § 36–9–402(5) (1976)[5]. The purpose of the rule is to allow "minor errors which are not seriously misleading" in order "to simplify formal requisites and filing requirements." § 36–9–402, Official Comm. No. 5 (1976). Nevertheless, the "error rule" proscribes two types of error: a minor error which is seriously misleading, and a major error (omission of a § 36–9–402(1) financing statement requirement[6]) which is not seriously misleading. Either prevents a financing statement from falling within the "substantial compliance" relief of § 36–9–402(5). *Borg-Warner Acceptance Corp. v. Anderson (In re Hogan)* 20 U.C.C. 1102, 1108 (Bkrtcy.D.S.C.1976); § 36–9–402, S.C. Reporter's Comm. (1976); J. White & R. Summers, Uniform Commercial Code 954 (2d ed. 1980) [hereinafter cited as White & Summers].

In *Putterbaugh v. Fournier (In re Happy Jack's Restaurant, Inc.),* 29 U.C.C. 653 (Bkrtcy.D.Me.1980), and in *In re Uptown*

---

**3.** § 502(a): A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, including a creditor of a partner in a partnership that is a debtor in a case under chapter 7 of this title, objects.

**4.** Further reference to the South Carolina Code will be by section only.

**5.** § 36–9–402(5): A financing statement substantially complying with the requirements of this section is effective even though it contains minor errors which are not seriously misleading.

**6.** § 36–9–402(1): A financing statement is sufficient if it is signed by the debtor and the secured party, gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor and contains a statement indicating the types, or describing the items, of collateral. A financing statement may be filed before a security agreement is made or a security interest otherwise attaches. When the financing statement covers crops growing or to be grown or goods which are or are to become fixtures, the statement must also contain a description of the real estate concerned. A copy of the security agreement is sufficient as a financing statement if it contains the above information and is signed by both parties.

*Variety,* 6 U.C.C. 221 (Bkrtcy.D.Or.1969), the courts found that the reversal of the debtors' and secured parties' names rendered the financing statements ineffective. Although such error is minor, it is seriously misleading because financing statements are filed under a debtor's name pursuant to § 36–9–403(4)[7], and the filing provides notice to the world of the perfected security interest. *In re Eady,* 4 B.R. 1 (Bkrtcy.N.D. Ga.1980); *Putterbaugh v. Fournier, supra; In re Uptown Variety, supra.*

The situation here is distinguishable because, as the uncontradicted evidence shows, Crepaco corrected the name reversal before filing the statements.

■ Since Crepaco has filed a valid proof of claim, it has established, under Bankruptcy Rule 301(b)[8], *prima facie* evidence of its claim thereby putting on the trustee the burden of going forward and producing sufficient evidence to rebut Crepaco's claim. *In re Record Club of America, Inc.,* 18 B.R. 456 (Bkrtcy.M.D.Pa.1982); *In re Good Hope Industries, Inc.,* 16 B.R. 719 (Bkrtcy.D.Mass. 1982); *In re John J. Orr & Sons, Inc.,* 22 B.R. 874 (Bkrtcy.D.R.I.1982); *In re Conklin's Inc.,* 14 B.R. 318 (Bkrtcy.D.S.C.1981).

■ Here, the trustee has only objected to Crepaco's secured claim; he has not come forward with probative evidence to show that the financing statements were incorrectly prepared or recorded prior to the debtor's petition for relief. This is inadequate. *In re King Resources Co.,* 20 B.R. 191 (D.C.D.Colo.1982).

**2**

The trustee contends that Crepaco's collateral has become a fixture on the premises and is no longer "property of the estate"[9] because the premises were released[10] to the landlord prior to removal of the collateral. This position is untenable.

This court must look to South Carolina law other than the U.C.C. to determine if the collateral is a fixture. § 36–9–313(1).

■ A fixture is " 'an article which was a chattel, but by being physically annexed to the realty by one having an interest in the soil becomes a part and parcel of it.' " *Creative Displays, Inc. v. South Carolina Highway Dept.,* 272 S.C. 68, 248 S.E.2d 916, 917 (1978). However, when property is placed on leased premises for trade purposes, it may remain personal by implication if the lessor neither paid for the property nor its installation, otherwise, the lessor would be unjustly enriched. *City of Greenville v. Washington American League Baseball Club,* 205 S.C. 495, 32 S.E.2d 777, 783 (1945). This exception encourages trade and industry. *Carroll v. Britt,* 227 S.C. 9, 86 S.E.2d 612, 616 (1955).

■ The intention with which the collateral was fixed to the realty, not the mode of annexation, determines if a trade purpose exists. *Washington American League Baseball Club,* 32 S.E.2d at 783. Such intention may be deduced from external facts such as the character of the article, the relationship of the parties and the purposes and use for which the article was attached. *A.T. & T. v. Muller,* 299 F.Supp. 157, 159 (D.S.C.1968); *Readfield Tel. & Tel. Co. v.*

**7.** § 36–9–403(4): [T]he filing officer shall index the statements according to the name of the debtor. . . .

**8.** Bankruptcy Rule 301(b): *Evidentiary Effect.* A proof of claim executed and filed in accordance with these rules shall constitute *prima facie* evidence of the validity and amount of the claim.

**9.** § 541(a): The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located: (1) Ex-

cept as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

**10.** § 554: (a) After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value to the estate. (b) On request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value to the estate.

*Cyr,* 95 Me. 287, 49 A. 1047, 1048 (1901). The more recent cases place the greatest emphasis on the "use factor," that is, the character and use of the article and the devoted use of the land. *Muller,* 299 F.Supp., at 160.

■ Here, all of the evidence supports the conclusion that the collateral was designed for a trade purpose, hence, is not a fixture. The relationship of the lessor and the debtor was that of landlord and tenant, a generally limited relationship in which a person would not usually make extensive improvements to realty without consideration. The collateral was property specifically acquired for the debtor's meat packing business. Since the debtor had to buy basic refrigeration equipment such as a compressor, piping and wiring, it is reasonable to conclude that the premises had never been consistently used for meat packing. There is no evidence that the debtor agreed to make the collateral permanent improvements or that the premises were intended to permanently become meat packing premises.[11]

The collateral falls under the trade fixture exception.

### 3

The final threshold problem for the court's consideration is determining when Crepaco's security interest attached. The attachment must have occurred before Crepaco's interest may be perfected. The time of attachment is critical in determining if the trustee can avoid Crepaco's interest under § 547(b).

■ For an enforceable security interest to attach, there must be a written security agreement, signed by the debtor, describing the collateral, value must have been given by the secured party, and the debtor must have rights in the collateral. § 36–9–203(1); § 36–9–204(1). All of these requirements are present; Crepaco's interest

has attached. The trustee has offered no evidence to the contrary.

Having determined that Crepaco's interest has attached, the time of attachment must be fixed, and this may be done upon ascertainment of when the debtor acquired rights in the collateral.

■ "Rights in the collateral" can be less than complete ownership and title. *Baker v. Equitable Leasing Corp.,* 275 S.C. 359, 271 S.E.2d 596, 599 (1980); *Nasco Equipment Co. v. Mason,* 291 N.C. 145, 229 S.E.2d 278, 283 (1976). At the least, delivery and possession give a debtor "rights in the collateral." *Goldberg Co. Inc. v. County Green Limited Partnership,* 438 F.Supp. 693, 696 (W.D.Va.1977); *Babson Credit Plan, Inc. v. Cordele Production Credit Ass'n.,* 146 Ga.App. 266, 246 S.E.2d 354, 358 (1978); *White & Summers* at 917. This court thus concludes that Crepaco obtained "rights in the collateral" at least upon delivery and possession.

■ The delivery and possession of the collateral commenced on April 1, 1981, and ended on September 25, 1981 when the last part of the collateral was delivered and installed. When a piece of collateral consisting of several components is delivered over a period of time, possession is deemed to have occurred when delivery of the parts is complete. (*In re Automated Bookbinding Services, Inc.*), 471 F.2d 546 (4th Cir.1972); *National Acceptance Co. of California v. Community Bank (In re Ultra Precision Industries, Inc.),* 503 F.2d 414 (9th Cir.1974); *Household Finance Corp. v. Brahm,* 7 B.R. 253 (Bkrtcy.S.D.Ohio 1980).

Possession of the collateral in this case occurred on September 25, 1981. Possession of the collateral gave the debtor rights in it, *ergo,* Crepaco's security interest attached on September 25, 1981.

### 4

■ Having determined the time of attachment, the court now addresses the basic

---

11. In *Washington American League Baseball Club, supra,* where the court found the improvements to be fixtures, the lease contract stated that the lessee was to have the land *rent* *free* if the lessee made improvements such as grading the field and providing fencing and grandstands.

issues of whether Crepaco has a perfected security interest in the collateral which has priority over the trustee's interest, and whether the trustee can avoid Crepaco's interest under § 547(b).

Crepaco has a purchase-money security interest, under § 36–9–107(a) [12] which was perfected upon the filing of the financing statement [13] on September 28, 1981, three days after the attachment.

The trustee became a lien creditor [14] of the debtor on October 1, 1981, and since the trustee can stand in no better position than a judgment or lien creditor, *Ingersoll-Rand Financial Corp. v. Nunley,* 671 F.2d 842 (4th Cir.1982), the trustee's interest is subordinate to Crepaco's interest pursuant to § 36–9–301(1)(b) which says: "Except as otherwise provided in subsection (2), an unperfected security interest is subordinate to the rights of . . . (b) a person who becomes a lien creditor without knowledge of the security interest and *before it is perfected* . . . ." (Emphasis added).

Crepaco's perfected security interest comes within the § 547(c)(3) exception to the trustee's avoiding powers under § 547(b) [15].

Crepaco's interest fulfills all the requirements of § 547(c)(3) [16] in that: (1) the security interest secured new value, that is, the debtor received "new credit." [17]; (2) the "new value" was given by Crepaco after the signing of the security agreement, which contained a description of the collateral, in order to enable the debtor to purchase the collateral; (3) the debtor used the "new value" to obtain the collateral; (4) Crepaco perfected its interest within ten days of attachment—attachment occurring on September 25, 1981, and perfection by filing on September 28, 1981.

Crepaco's security interest was created ("took effect") on April 1, 1981, and was perfected on September 28, 1981—almost

---

**12.** § 36–9–107: A security interest is a "purchase money security interest" to the extent that it is (a) taken or retained by the seller of the collateral to secure all or part of its price. . . .

**13.** § 36–9–303(1): A security interest is perfected when it has attached and when all of the applicable steps required for perfection have been taken. . . .

(The applicable step in this case was filing because the security interest here did not fall under a filing exception. § 36–9–302).

**14.** § 36–9–301(3): A "lien creditor" . . . includes . . . a trustee in bankruptcy from the date of the filing of the petition. . . .

§ 544(a): The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained a judicial lien, whether or not such a creditor exists; . . . .

**15.** § 547(b): Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor—(1) to or for the benefit of a creditor; (2) for or on account of an antecedent debt owed by the debtor before such transfer was made; (3) made while the debtor was insolvent; (4) made—(A) on or within 90 days before the date of the filing of the petition; . . . (5) that enables such creditor to receive more than such creditor would receive if—(A) the case were a case under chapter 7 of this title; (B) the transfer had not been made; and (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

**16.** § 547(c): The trustee may not avoid under this section a transfer—. . . (3) of a security interest in property acquired by the debtor—(A) to the extent such security interest secures new value that was—(i) given at or after the signing of a security agreement that contains a description of such property as collateral; (ii) given by or on behalf of the secured party under such agreement; (iii) given to enable the debtor to acquire such property; and (iv) in fact used by the debtor to acquire such property; and (B) that is perfected before 10 days after such security interest attaches; . . . .

**17.** § 547(a): In this section—. . . (2) "new value" means money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, but does not include an obligation substituted for an existing obligation.

six months later. Such a long intervening time compels the conclusion that the transfer (perfection) was "on account of an antecedent debt." § 547(b)(2).

It should be noted that inasmuch as Crepaco's perfection is a transfer "on account of an antecedent debt" it does not fall within the "relation back rule" of § 547(e)(2)(A) which says that a transfer occurs when it "takes effect between the transferor and the transferee, if such transfer is perfected at, or within 10 days after, such time; . . . ." Section 547(e)(2)(A) has the effect of making a recent (within 10 days) transfer a *contemporaneous* exchange, thereby preventing a trustee from avoiding such a transfer under § 547(b). White & Summers at 1003.

The requirements of § 547(c)(3) existing, the trustee cannot avoid Crepaco's interest.

### CONCLUSION

Crepaco's financing statement contained no major or seriously misleading errors, and was perfected upon the filing of the statement. Thus, Crepaco has a secured claim. Such a claim has priority over the claim of the trustee, who merely has the status of a lien creditor.

The collateral has not become a fixture; it remains personalty under South Carolina's trade fixture exception.

The trustee cannot avoid the perfection of Crepaco's interest under § 547(b) because of § 547(c)(3).

### ORDER

It is, therefore, ORDERED, ADJUDGED AND DECREED:

1. That the trustee's objection to Claim Number 57 be, and the same hereby is, overruled; and

2. That the claim be, and it hereby is, allowed as a secured claim in the amount of $20,625.42.