1287

UNLIMITED SERVICES, INC., Respondent v. MACKLEN ENTERPRISES, INC. and Melton Macklen, Appellants.

(382 S. E. (2d) 1)

Court of Appeals

*John L. Sweeny*, of *Hudson & Sweeny*, Myrtle Beach, *for appellants.*

*Henrietta U. Golding* and *Preston B. Haines, III*, both of *Bellamy, Rutenberg, Copeland, Epps, Gravely & Bowers*, Myrtle Beach, *for respondent.*

Heard Dec. 7, 1988.

Decided Feb. 6, 1989.

GARDNER, Judge:

Unlimited Services, Inc., (Unlimited), which operated a restaurant called the "Bullshipper," sued Macklen Enterprises, Inc., and Melton Macklen (Macklen) for, *inter alia*, fraud and deceit and conversion of deposit money. Upon trial, the jury returned a verdict for Unlimited in the amount of $254,542.04, of which $20,000.00 was for the conversion cause of action, which was set aside by the trial judge. Judgment was then entered against the appellant in the aggregate amount of $234,542.04. We reverse and remand.

## FACTS
This action involves a lease originally between Macklen and Origin, Inc., the terms of which are set forth in a Lease Agreement and a later Memorandum of Lease dated December 5, 1984, which refers to the former document. The Memorandum of Lease describes the lease property as follows:

> All those certain pieces, parcels or tracts of land situate, lying and being in Horry County, State of South Carolina, and shown as Parcels "B" and "D" on a map of Back-Gate Properties of a portion of Lot 25 and a portion of Lot 26 through Lot 42 divided into Parcels A, B, C, D and E, surveyed by P. H. Dukes, R.L.S., on the 10th day of March, 1984, and recorded in the Office of the Clerk of Court for Horry County in Plat Book 79, Page 247.

The following is a drawing made from the above referred-to plat:

The evidence, in a light most favorable to Unlimited, is that on October 30, 1984, William J. Smith, an owner of Unlimited, entered into a contract with Origin to purchase the restaurant business known as Gina's Tophat which was operated on Parcel "B" of the leased premises and further that Origin agreed to assign its lease from Macklen to Unlimited. This contract for the sale of the restaurant business contained a provision that there was no representation except as contained in the written agreement, which made no reference to any right of access between the north bound lane of U. S. Highway 17 By-pass and the frontage road area delineated on the plat.

The core of this action lies in Unlimited's allegation that Macklen represented to the principals of Unlimited that the access to and from U. S. Highway 17 By-pass to the frontage road area was a permanent easement of exit and entrance. There is no evidence of record of an explicit representation by Macklen as alleged by Unlimited.

The principals of Unlimited were William J. Smith and Mary Sargent. The contract of October 30,. 1984, provided that the closing of the transaction would be on December 15, 1984. The lease, by its own terms, could not be assigned without Macklen's consent. We emphasize that Macklen did not know either Smith or Sargent on October 30, 1984.

Subsequently, in early November 1984, while Smith and Sargent were on the restaurant property, Macklen by chance came by the property and introduced himself to Smith and Sargent as the owner of the property. At that time Smith

and Sargent stated that they were looking at the "possibilities" of the restaurant property.

Later in November, Macklen, Smith and Sargent again met at the property. Smith then expressed concern that the access from the highway into the restaurant lot had a "dip" or "gully" which needed some repair. Smith and Sargent testified that Macklen assured them that he would repair the access.

The testimony of record reflects that there were no highway signs on the access. It was not paved; there was no ramp connecting the highway to the access passageway; there was no corresponding street or access between the north and south bound lanes of the highway. About a quarter mile south of the restaurant was a Waffle House to which there was a paved entrance from the highway and a corresponding paved crossing from the north bound lane to the south bound lane. Both Smith and Sargent testified that the frontage road was not completed. Smith described it as a "bumpy whatevers." Pictures introduced by the plaintiffs reflect that there is a road but do not reflect whether it is paved or the state of repair. Taking the evidence in a light most favorable to the plaintiff, the frontage road was not maintained, was bumpy and could not be considered as a road.

On December 5, 1984, Macklen consented to the assignment of the lease, and the transaction between Origin and Unlimited was closed. Unlimited opened its restaurant, which it called the "Bullshipper," in February 1985, and enjoyed some success.

In April 1985, the South Carolina Department of Highways and Public Transportation (Highway Department) placed barricades and signs on the driveway to prohibit its use by the public; these were knocked down. The Highway Department subsequently dug up the culverts beneath the driveway and thereby made it impossible for traffic to leave the highway, cross the frontage road, such as it was, and enter the restaurant parking lot. There are pictures of record of the culverts after the Highway Department dug them up. These pictures dramatically reflect the absence of a ramp connecting the highway with the dirt access; the drop in elevation from the highway to the adjoining land appears in the pictures to be significant. The nearest permanent

entrance from the highway to the subject property was near the Waffle House about a quarter mile south of the restaurant. From that point, one would have to drive over the frontage road in order to reach the restaurant. This road is paved with asphalt for a short distance; thereafter, it is covered with coquina.

Both Smith and Sargent testified that after the closing of the subject access road, there was a steady decline in their business; they closed the restaurant in November 1985.

At the close of the testimony, Macklen made a motion for a directed verdict on the grounds, *inter alia*, (1) that there was no misrepresentation upon which a fraud action could be based and (2) that Unlimited did not rely on the alleged misrepresentations since they had contracts for the assignment of the lease prior to the alleged misrepresentation, (3) that Unlimited had no right to rely on the alleged misrepresentation, and (4) that Unlimited had been put on notice to make inquiry and that an examination of the public records would have disclosed that there was no permanent access to the highway. The motions were renewed as post-vedict motions for judgment n.o.v. and a new trial.

## ISSUE

The dispositive issue of this case is whether under the circumstances of the case, Unlimited's principals had a right to rely on the alleged misrepresentations.

## DISCUSSION

There are nine elements which must be proved in an action for fraud and deceit. Among these are the hearer's reliance upon the truth of the alleged misrepresentation and his right to rely thereon. *See Mylin v. Allen-White Pontiac, Inc.,* 281 S. C. 174, 314 S. E. (2d) 354 (Ct. App. 1984).

Assuming, arguendo, that a misrepresentation was intentionally made by Macklen, we hold that the circumstances of this case were sufficient to put the principals of Unlimited upon inquiry. Where the circumstances of a case are sufficient to put a party upon inquiry, he is held to have notice of everything which that inquiry, properly conducted, would have disclosed. *City of Greenville*

*v. Washington American League Baseball Club*, 205 S. C. 495, 32 S. E. (2d) 777 (1945).

In the case before us the alleged access was unpaved; there was no ramp from the highway to the access; there were no signs indicating intersections or the fact that there was an exit; there was no corresponding way of ingress and egress from the north to the south lane of U. S. Highway 17 By-pass. And down the road at the Waffle House there was a paved exit, with a corresponding paved access between the two lanes of the highway and this exit led to the frontage road into which the temporary access of this case led. All of the above is undisputed. In fact, we find no evidence of record which would convey the impression to a person contemplating buying a restaurant across the frontage road that the subject access was a permanent access maintained by the Highway Department; to the contrary, the surrounding circumstances, we hold, are such as to put a normally prudent person upon notice that the access as it existed in October and November 1984, might not be a permanent right of ingress and egress to the North bound lane of U. S. Highway 17 By-pass.

Under the above facts of this case, we hold that there are circumstances of record which were sufficient to have put the principals of Unlimited upon inquiry as to whether the subject access was a permanent access. This being true, Unlimited was charged with what an inquiry, properly conducted, would have disclosed. The plat of record, referred to in the Lease Agreement and the Memorandum of Lease, does not show an access from Highway 17 By-pass to the frontage road and would have therefore disclosed that the subject access might not be permanent. Unlimited's principals could have simply asked Macklen or Origin's principals whether the access was private or public, permanent or temporary. Or they could have asked the Highway Department the same question. Any of these steps might have disclosed the temporary nature of the subject access, but Unlimited's principals made no inquiry whatsoever. We therefore hold under these circumstances the trial judge erred in (1) failing to direct a verdict as to the fraud and deceit action and (2) failing to grant Macklen's motion for judgment n.o.v. These were reversible errors and accordingly the case is reversed.

## CONCLUSION

For the reasons stated above, the judgment below is reversed and the case is remanded for purposes of entry of judgment in accordance with this decision.

Reversed and remanded.

SANDERS, C. J., and GOOLSBY, J., concur.