### 6610

### LEE v. UNKEFER.

1. PARTIES—DEMURRER—ANSWER.—If there be failure to join a necessary party plaintiff, and the defect appears on the face of the complaint the objection must be raised by demurrer, if not disclosed by the complaint, it should be raised by answer, and if not raised by either mode, is waived.

2. STATUTE OF FRAUDS—DEBT OF ANOTHER.—A promise to pay the debt of another upon forbearance to enforce a subsisting lien is not within the statute of frauds where the release is a damage to the creditor or a benefit to the party making the promise.

3. EVIDENCE—NONSUIT.—Objection not interposed to evidence when offered cannot be urged as ground for striking it out, nor can admission of incompetent evidence serve as basis of motion for nonsuit.

4. ALLEGATION AND PROOF.—Where there is a material variance between the allegations in a complaint and the proof new trial should be granted.

Before KLUGH, J., Spartanburg, November Term, 1905. Reversed.

Action by J. M. Lee against J. G. Unkefer, Edward J. McIlwain and Sam'l B. Goucher. From judgment for plaintiff, defendant, Unkefer, appeals.

*Messrs. Simpson* and *Bomar,* for appellant. No argument furnished Reporter.

*Messrs. Sanders* and *DePass, contra,* cite: *The agreement of defendants here does not come within statute of*

*frauds:* 3 Strob., 177, 207; 29 S. C., 14; 1 Rich., 113. *Evidence of plaintiff as to the contract did not contradict or vary any written agreement:* 61 S. C., 169; 72 S. C., 364; 65 S. C., 134. *What note the agreement referred to was for the jury:* 63 S. C., 567. *And whether such agreement was ever made was for them:* 55 S. C., 174; 66 S. C., 482; 76 S. C., 63. *Defendant is estopped from setting up the statute of frauds:* 26 S. C., 90.

August 2, 1907. The opinion of the Court was delivered by

MR. JUSTICE GARY. This is an action to recover the balance alleged to be due on a promissory note.

The questions presented by the exceptions render necessary reference to the complaint, the allegations of which are substantially as follows: That the defendants were partners doing business, as plaintiff is informed and believes, under the firm name of McIlwain, Unkefer Company. That on or about the            day of            1900, the plaintiff herein, being then the owner of a note dated the 19th of December, 1895, for $7,500.00, due on or before the first of January, 1901, signed by James C. Johnston, and secured by a mortgage of real estate, and being also the owner of a note dated the 18th of November, 1896, due December 18, 1896, for $3,964, signed by James C. Johnston, and secured by mortgage of real estate, commenced an action to foreclose said mortgages. That at the time of the commencement of said action, the Central National Bank held a note of James C. Johnston, indorsed by this plaintiff, dated June 10th, 1898, for $6, 129.23, with interest thereon at eight per cent. per annum from the 4th of April, 1900, and to secure said note this plaintiff had assigned and delivered, as collateral security, the notes and mortgages to said bank. That the defendants, having formed a corporation, or being about to form one, with James C. Johnston, and being desirous of purchasing the

land covering said mortgages, for the purpose of quarrying stone, in order to obtain a clear title to said land, contracted with this plaintiff, that if he would stop said suit and assign Samuel B. Goucher the said mortgages and notes, they would pay the amount due the Central National Bank by the said James C. Johnston, for which this plaintiff was security, and, in addition to that, would pay the plaintiff in cash the sum of $2,000, and would pay the balance due on the note by James C. Johnston to the Central National Bank, for which this plaintiff was security, which note was to be assigned by the Central National Bank to this plaintiff. Said payments to be made as follows: $1,000.00 of said balance to be paid on the first of November, 1901, the balance to be paid on April 1st, 1902, the interest in the meantime to be paid semi-annually.

That in consideration of said agreement, this plaintiff did stop said suit for the foreclosure of said mortgages, and did assign the same to Samuel B. Goucher, which assignment this plaintiff alleges was for the benefit of all the defendants herein. It being understood, as plaintiff is informed and believes, that these defendants were to take stock in the corporation then recently formed, or about to be formed, to be known as Keystone Granite Company, in payment and satisfaction of said mortgages. That thereafter the defendant did pay to plaintiff the amount due Central National Bank, and the sum of $2,000.00 in cash, and on the 10th of November, 1901, the $1,000.00 first installment on the balance of said note, as they had agreed to do. That defendants have failed to pay the balance due on said note, and there is now due by defendants to plaintiff the sum of $3,459.56, interest thereon at the rate of eight per cent. per annum from the first of November, 1901.

The defendant, J. G. Unkefer denied the allegations of partnership, also the allegations as to the agreement between the plaintiff and the defendants, and interposed the plea that the said agreement was obnoxious to the statute of frauds.

At the close of the plaintiff's testimony, the defendant, Unkefer, made a motion for a nonsuit, on the following grounds:

(1) "That James C. Johnston was a partner also, and there was a failure to join him as a party plaintiff.

(2) "That the testimony merely showed a collateral agreement to pay the debt of another, and which was not to be performed within a year.

(3) "That the plaintiff's action was to recover the balance on a note originally given for $6,129.23, and his own testimony showed that the defendant had promised to pay not the note sued on, but an entirely different note, executed at another time, and for the sum of $7,500.00."

The motion for nonsuit was refused.

The jury rendered a verdict in favor of the plaintiff for $4,410.72 against J. G. Unkefer (the only defendant who was served).

The defendant appealed upon numerous exceptions which, however, may be considered under the following heads:

*First.* Was there error in refusing the motion for nonsuit on the ground that there was a failure to join James C. Johnston as a party plaintiff?

The rule is well settled, that if there is a failure to join a necessary party as a plaintiff, and the defect appears upon the face of the complaint, the proper remedy is by demurrer. If, however, the complaint does not disclose the infirmity, then the objection must be taken by answer; but in either case the party raising the objection must point out the defect, in order that the amendment may not cause delay. If the objection to the nonjoinder of a party is not raised in this manner, it is waived. Pomeroy's Code Rem., sections 206 and 207; 15 Enc. of Pl. & Pr., 747-749.

The exceptions raising this question are overruled.

*Second.* Does the testimony merely show a collateral agreement to pay the debt of another?

One of the considerations entering into the agreement was the discontinuance of the suit for foreclosure of the two mortgages, and the cancellation or control of them by the defendants. The case is ruled by the well settled principle, recognized in *Ellis* v. *Carroll,* 68 S. C., 376, 47 S. E., 679, that a promise to pay the debt of another, upon forbearance to enforce a subsisting lien, is not within the statute of frauds, when the release is a damage to the creditor, or a benefit to the party making the promise.

The exceptions raising this question cannot be sustained.

*Third.* Was the testimony of the plaintiff inadmissible, on the ground that it contradicted the written evidence of the agreement?

In the first place, his Honor, the presiding Judge, was not requested to rule upon any specific objections to testimony supposed to contradict the written evidence of the agreement, and the general objection interposed by the defendant's attorneys was not sufficient to raise this question. The presiding Judge, therefore, properly refused to consider this objection in ruling upon the motion for nonsuit, and, even if it was incompetent, it could not serve as the basis of a motion for nonsuit. *Ashe* v. *Ry.,* 65 S. C., 134, 43 S. E., 393.

The exceptions raising this question are overruled.

*Fourth.* Was there a fatal variance between the allegations of the complaint and the testimony, as to the agreement between the plaintiff and the defendants?

On the 8th of January, 1900, while the action was pending to foreclose the two mortgages, S. P. Goucher, for McIlwain, Unkefer Co., entered into a written agreement with the plaintiff, whereby Lee was to take no further action in the foreclosure proceedings, until 1st April, 1900, and in consideration thereof the defendants were to pay the interest on the $7,500.00 note from that date, until the 1st of April, 1900, and also the interest on the $6,129.23 note, and at the expiration of the

time mentioned the defendants were to have the option of paying the $6,129.23 note and of securing to Lee payment of the note for $8,000.00 (meaning thereby the $7,500.00 note), or of paying that note and of having it assigned to them or some one of them.

The testimony shows that Unkefer, about the 1st of April, 1900, came to Spartanburg and refused to abide by the said agreement; and that he and the plaintiff entered into another agreement, the terms of which are thus stated by the plaintiff:

"Q. What was the trade? A. He was to pay off the bank note and release me of that, and then was to pay $2,000.00 to me at that time, and at six months to pay another $1,000.00, and at another six months was to pay the remainder with interest. Q. Which note was that? A. $8,000.00 note. Q. How much did he pay the bank at that time? A. He paid it all up. Q. Paid the $8,000.00 all off? A. $6,000.00. Q. The $6,000.00? A. Entirely off. Q. He paid that to the bank on that date? A. Yes, sir. Q. After he had paid it off, what did he do—what did the bank do? A. Gave it to me, I reckon. Q. What note are you suing on in this action? A. Suing on the note that was given first, as he promised to pay off. Q. What I want to know is which note is it you claim Mc-Ilwain, Unkefer Co. owe you. Is it this $6,129.00, or $7,500.00, or the $3,149.00 note? A. I reckon it is the $7,500 note. Q. Don't you know? A. He paid off the bank. Q. Your suit, Mr. Lee, is brought on the $6,129.00 note and the allegation here in the complaint is, that they owed you a balance on that note. Is that correct? A. They had two mortgages. Q. Which note is it you are suing on? Which note is it that Unkefer promised to pay? A. It was the $8,000.00 note. He promised to pay me first and then he would not do that. He wanted some changes and when I agreed, then he paid the bank off. Q. How much money did Mr. Unkefer pay the bank when he was here the latter part of March? A. He paid them $6,000.00. Q. $6,129?

A. Yes, sir. Q. What became of the note for $6,129, have you ever had it from that day until this? A. No, sir. Q. And it was paid off that day at the bank, the Central National Bank? A. Yes, sir. Q. After that was paid he paid you in addition $2,000.00 in cash? A. That was on that $8,000. Q. He paid you that day $2,000 in cash? A. Yes, sir. Q. Didn't he also pay you later a $1,000.00? A. Yes, sir, in six months. Q. You say that $8,000.00 is still due? A. Yes, sir. Q. Balance of the $8,000.00 note? A. Whatever it is."

It will thus be seen that the agreement alleged in the complaint and the testimony of the plaintiff to sustain those allegations vary in important particulars. It is stated in the complaint, and seems to be conceded by the plaintiff in his testimony, that the note for $6,129.23 was paid in full to the Central National Bank, by the defendants. If this be true, then a recovery in this action would, to that extent, compel the defendants to pay the note *twice*, even, too, after it had lost its legal effect.

These complications would be avoided, if the plaintiff could recover upon an agreement, that the defendants were to pay the balance due on the note for $7,500.00.

This Court, of course, is not to be understood as expressing any opinion upon the facts, but wishes merely to show that there is a vital variance between the allegations and the testimony. The exceptions raising this question are sustained.

It is the judgment of this Court, that the judgment of the Circuit be reversed, and the case remanded to that Court for a new trial.