## 0916

Marian S. LYLES, Respondent v. BMI, INC., a corporation, and Automatic Service Company, f/k/a and as successor to ASC Vending Co., Inc., a corporation, Appellants. Marian S. LYLES, W. Lawrence Lyles, Jr., Richard L. King and William Martin Chapman, Sr., as Executors under the Last Will and Testament of Marian F. Stewart, deceased, Respondents v. BMI, INC., a corporation, and Automatic Service Company, f/k/a and as successor to ASC Vending Co., Inc., a corporation, Appellants.

(355 S. E. (2d) 282)

Court of Appeals

*Joseph G. Wright, III*, of *Wright & Trammell*, Anderson, and *Simon A. Miller*, of *Arnall, Golden & Gregory*, Atlanta, Ga., *for appellants.*

*Steven C. Kirven*, of *Watkins, Vandiver, Kirven, Gable & Gray*, Anderson, *for respondents.*

Heard Feb. 25, 1987.

Decided March 30, 1987.

GOOLSBY, Judge:

These actions against the appellants BMI, Inc., and Automatic Service Company (ASC) to recover additional rent allegedly due under a lease and to recover prejudgment interest thereon were brought by the executors of the Estate of Marian F. Stewart and by Marian S. Lyles, Stewart's assignee. The circuit court granted the respondents' motion for summary judgment and awarded them additional rent together with prejudgment interest. We reverse and remand.

The issues we address relate to whether there are genuine questions of material fact regarding whether the respondents were entitled to additional rent under the lease agreement and whether the respondents waived any right to receive additional rent.

On January 30, 1961, Stewart, as lessor, and BMI, as lessee, entered into a lease agreement involving a building in Belvedere Plaza Shopping Center in Anderson, South Carolina. The lease provided for an annual minimum rent of $12,000 and an additional amount based on the lessee's annual gross sales "during the original and any extended term [t]hereof." The lease required the lessee to furnish annual

statements of gross sales. It also required the lessee to keep in its central offices complete and accurate records reflecting the sales made upon the demised premises during each day of the lease so that the lessor or his agents could readily verify the sales information furnished by the lessee to the lessor. The initial term of the lease expired at "midnight on January 31, 1976." The lessee had the option to extend the term of the lease beyond January 31, 1976, for an additional term of ten years "upon the same terms, covenants, and conditions" as those stated in the lease.

BMI operated a store upon the leased premises for a period of time but eventually closed it. Sometime after BMI ceased operations, Gallant-Belk Company indicated to BMI its interest in subleasing the property.

On December 24, 1964, Stewart wrote a letter to BMI expressly stating a willingness to waive the additional rent clause in the lease if BMI were to sublet the leased premises to Gallant-Belk. His letter explained that the rent "would be $12,000 annually, payable $1,000 monthly regardless as to what the sales amount [would] be." The last paragraph of Stewart's letter stated that "[t]his agreement will cover the original term of the lease which ends at midnight on January 31, 1976."

BMI thereafter entered into a sublease with Gallant-Belk. The sublease provided that "the rental to be paid by Sublessee shall never exceed Twelve Thousand Dollars ($12,000) per year." Gallant-Belk, as sublessee, agreed to be controlled by "the same conditions and covenants" as governed BMI under the lease.

Gallant-Belk took possession of the premises and began paying BMI $12,000 a year in rent. BMI in turn paid the lessor.

In 1974, Gallant-Belk under an option granted to it by BMI requested that BMI extend its lease with Stewart for an additional ten years. On November 25, 1974, BMI notified Stewart that it wished to exercise the renewal option pursuant to the lease agreement. On November 27, 1974, Stewart responded to BMI by accepting the "option being exercised pursuant to said Lease Agreement."

Following the extension, Stewart continued to receive from ASC only $1,000 a month in rent. Other tenants in the

shopping center continued to pay additional rent based on annual sales. Neither Gallant-Belk nor BMI thereafter furnished a statement to the lessor showing the amount of annual gross sales made on the leased premises.

In 1976, through a series of mergers, name changes, and acquisitions, ASC became the corporate successor to BMI and guaranteed the performance of all BMI obligations.

Three years later, Stewart assigned the lease in question to his daughter Lyles. Her husband managed the property for her and collected the rent. Neither he nor anyone else inquired about the lessee's failure to provide annual statements of gross sales, demanded to examine Gallant-Belk's sales records, or sought additional rent from the lessee.

Stewart died sometime after assigning the lease to his daughter.

In 1983, Richard King, one of the executors of Stewart's estate, concluded that the lessee owed additional rent under the lease. King reached this conclusion based on a notation appearing in a 1979 appraisal of the shopping center in the section relating to the subject lease. The notation read, "overage: yes."

Eventually, the respondents commenced this action. BMI and ASC answered, denying that they owed any additional rent and asserting, among other things, the affirmative defense of waiver.

The respondents subsequently moved for summary judgment.

The circuit court granted their motion, holding that "the contractual agreement between the parties is clear and unambiguous" and that the respondents were entitled to additional rent based on gross sales from February 1, 1977, through January 31, 1985, and to prejudgment interest at the applicable legal rate. The circuit court also held that, "[b]ased on undisputed facts in this case," there was no evidence the lessor ever intentionally relinquished the right to receive additional rent after January 31, 1976.

The appellants argue that since the agreement in issue contains ambiguous language and disputed inferences and since different conclusions may be drawn from the facts appearing in the record, summary judgment was improper. We agree.

According to Rule 56(c) of the South Carolina Rules of Civil Procedure, summary judgment may be rendered only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. It must also be shown that further inquiry into the facts of the case is not desirable to clarify the application of the law. In ruling on a motion for summary judgment, the court must construe all ambiguities, conclusions, and inferences arising in and from the evidence most strongly against the moving party. *Folkens v. Hunt*, 290 S. C. 194, 348 S. E. (2d) 839 (Ct. App. 1986).

Where there is present on a motion for summary judgment a question as to the construction of a written agreement that can be determined by a consideration of the plain and unambiguous language of the contract, the question as one of law may be resolved by the court. *First-Citizens Bank & Trust Co. v. Conway National Bank*, 282 S. C. 303, 317 S. E. (2d) 776 (Ct. App. 1984). But where the language of the writing or writings constituting the agreement is ambiguous, summary judgment is improper because the intent of the parties would then be a genuine issue of fact. *Freeman v. Continental Gin Co.*, 381 F. (2d) 459, 4 A.L.R. Fed. 104 (5th Cir. 1967), *reh. denied*, 384 F. (2d) 365 (1967); 73 Am. Jur. (2d) *Summary Judgment* § 5 at 727-28 (1974); *see Black v. Freeman*, 274 S. C. 272, 262 S. E. (2d) 879 (1980) (where the terms of a contract are ambiguous, the question of the parties' intent should be submitted to a jury). "An ambiguous contract is one capable of being understood in more senses than one, an agreement obscure in meaning, through indefiniteness of expression, or having a double meaning." *Bruce v. Blalock*, 241 S. C. 155, 160, 127 S. E. (2d) 439, 441 (1962).

The agreement here consists of two writings, the original lease agreement between Stewart and BMI and the letter written by Stewart to BMI on December 24, 1964. In his letter to BMI, Stewart clearly waived the payment of additional rent based on gross sales until the expiration of the original term of the lease at midnight on January 31, 1976. What is not clear, however, is whether Stewart's letter also waived the payment of additional rent based on gross sales during any extended term of the lease.

The lease agreement gave BMI the option to extend the lease for an additional ten years upon the same terms as those stated in the lease and expressly required the payment of additional rent based on gross sales. Stewart, however, pointedly modified the terms of the lease relating to the payment of additional rent based on gross sales.

While Stewart's letter does state that his agreement to waive additional rent "will cover the original term of the lease which ends at midnight on January 31, 1976," it nowhere limits his agreement to waive additional rent to the original lease term and it nowhere states that, notwithstanding his modifications of the lease's terms, covenants, and conditions as they related to the payment of rent, any extension of the lease would be upon the same terms, covenants, and conditions as those contained in the original lease.

We think, then, that the letter can be reasonably construed to mean that Stewart, as lessor, intended to modify the "terms, covenants, and conditions" of the lease as they related to the payment of additional rent based on gross sales and that any extension of the lease would embrace the original terms, covenants and conditions except to the extent that he modified them. The question of whether Stewart intended to waive the payment of additional rent only during the original lease term is, therefore, a question of fact for a jury to resolve. *Cf. Black v. Freeman, supra* (trial court erred in directing a verdict where the evidence was capable of more than one reasonable inference as to the parties' intent).

We next address the question of whether, as BMI and ASC contend, a genuine issue of material fact exists regarding whether the lessor waived the right to receive additional rent, assuming the extended lease agreement required the lessee to pay additional rent each year after January 31, 1976.

A waiver is an intentional relinquishment of a known right. *Bonnette v. State*, 277 S. C. 17, 282 S. E. (2d) 597 (1981). It may be either express or implied. *Lawrimore v. American Health and Life Insurance Co.*, 276 S. C. 112, 276 S. E. (2d) 296 (1981). An implied waiver results from acts and conduct of the party against whom the doctrine is invoked from which an intentional relinquishment of a right

is reasonably inferable. *Pitts v. New York Life Insurance Company*, 247 S. C. 545, 148 S. E. (2d) 369 (1966). Summary judgment should be denied where the facts, although not in dispute, are nonetheless subject to conflicting inferences. *Davis v. Piedmont Engineers*, 284 S. C. 20, 324 S. E. (2d) 325 (Ct. App. 1984).

When we view the facts as reflected by the record and consider all the inferences to be drawn therefrom most strongly against the respondents, we hold that there are triable issues of fact as to whether the lessor's acts and conduct amounted to an implied waiver of the right to receive additional rent based on gross sales.

The lessor's acceptance as rent of $12,000 each year without complaint for several years after the original lease term expired, the lessor's failure to demand annual gross sales reports from the lessee when they were not provided or to examine Gallant-Belk's sales records, particularly after the 1979 appraisal report suggested that payment of additional rent was required, and the lessor's receipt of additional rents based on gross sales from other tenants in the shopping center are acts and conduct from which an intention by the lessor to waive the payment of additional rent may reasonably be inferred. *See Lawrimore v. American Health and Life Insurance Co., supra* (waiver of an insurance company's right to obtain an initial premium under a contract may be inferred where the company acted in such a way that a reasonable inference could be drawn that the company was not standing on its right to receive it).

The circuit court, therefore, improperly decided the question of waiver on summary judgment.

At oral argument the appellants abandoned their exception regarding laches. We find it unnecessary to address the appellants' remaining arguments since we hold that summary judgment should not have been granted.

Accordingly, the judgment is

Reversed and remanded.

SANDERS, C. J., and CURETON, J., concur.