1246

Marvin Lee BISHOP, Sr., Respondent v. James H. BENSON, Jr., Appellant.

(374 S. E. (2d) 517)

Court of Appeals

*John E. Johnston*, of *Leatherwood, Walker, Todd & Mann*, and *Paul J. Foster*, of *Foster, Gaddy & Foster*, Greenville, *for appellant.*

*J. Kendall Few*, Greenville, *for respondent.*

Heard Oct. 18, 1988.

Decided Nov. 14, 1988.

CURETON, Judge:

Respondent—Bishop commenced this action against Appellant—Benson for specific performance of an option contract. The trial judge granted summary judgment as to liability on Bishop's first cause of action. Benson appeals. We reverse.

The parties own the stock of Benson-Bishop Pontiac Buick GMC, Inc. The corporation is a General Motors automobile dealership incorporated in 1981 by Benson and Bishop. Benson is the owner of 75 percent of the outstanding stock and Bishop owns the remainder of the corporation's stock. In December 1981, the parties entered into an agreement whereby Benson afforded Bishop the option of purchasing up to 15,000 shares of his corporate stock on January 15 of each year for five years beginning January 1983. These yearly purchases were to be made from Bishop's salary, dividends, or bonuses. The option further provides Bishop the right to purchase with funds available to him from any source all of Benson's stock not previously purchased before January 15, 1987. It is the final buy-out provision that generates this controversy.

The parts of the Agreement involved in this action are as follows:

> 2. "Benson" agrees that he will tender his shares so that "Bishop" may complete the buy-out by 15th of February, 1987.

3. "Bishop" may acquire any balance of the Corporation's shares at the conclusion of the buy-out term with funds from any source available to him, subject to the approval of General Motors Corporation, Pontiac, Buick, GMC Trucks Division.

4. When "Benson's" stock interest is to be finally purchased by "Bishop," any notes or other indebtedness outstanding of BENSON BISHOP PONTIAC BUICK GMC, INC., held or guaranteed by "Benson" or his assignee, must be retired by BENSON BISHOP PONTIAC BUICK GMC, INC., or purchased by "Bishop" before the balance of "Benson's" stock may be purchased.

It is undisputed Bishop made no attempt to exercise any of his option rights until February 11, 1987. At that time he presented Benson a check for the sum of $181,908.87 and demanded Benson transfer to him his stock. Benson refused. The next day after some discussion between the parties, Bishop mailed to Benson a check for $269,696.78, and again demanded transfer of the stock.[1]

Bishop filed this action for specific performance of the option agreement. Both parties moved for summary judgment. In support of his motion, Bishop contended the offers of February 11 and 12 were sufficient to exercise his option rights. On the other hand, Benson contended the offers did not constitute a proper exercise of Bishop's option rights because: (1) the option agreement required that notice of Bishop's intent to exercise the option be given to Benson on or before January 15, 1987; (2) the option agreement required that Bishop accomplish certain conditions precedent by February 15 which were not accomplished; and (3) the amount of the tender was inadequate.

The trial judge granted Bishop's motion for partial summary judgment as to liability holding Bishop's offers did as a matter of law constitute a proper exercise of his right to purchase Benson's stock. We disagree.

■ To entitle a party to summary judgment, he must show that no genuine issue exists as to any material fact and he is entitled to judgment as a matter of law.

---

[1] Apparently the letter was not opened by Benson until February 15, 1987.

*Tom Jenkins Realty, Inc. v. Hilton,* 278 S. C. 624, 300 S. E. (2d) 594 (1983). Summary judgment should be denied where the facts, although not in dispute, are nonetheless subject to conflicting inferences. *Lyles v. BMI, Inc.,* 292 S. C. 153, 355 S. E. (2d) 282 (Ct. App. 1987). Summary judgment is also improper where the motion presents a question as to the construction of a written contract, and the language employed in the contract is ambiguous so that intention of the parties as to the legal effect of the contract may not be gathered from the four corners of the instrument. *First Citizens Bank & Trust Co. v. Conway National Bank,* 282 S. C. 303, 317 S. E. (2d) 776 (Ct. App. 1984). In ruling on motions for summary judgment courts must view the evidence in the light most favorable to the nonmoving party. *Koren v. National Home Life Assurance Co.,* 277 S. C. 404, 288 S. E. (2d) 392 (1982).

Benson contends the contract is unambiguous and it clearly required Bishop to give notice of his intention to exercise the option on or before January 15, 1987. The trial court found no ambiguity in the contract, but concluded the January 15 notice was not required. Assuming for the purpose of this appeal that the contract is unambiguous as concerns the January 15 notice requirement, we conclude nevertheless that the contract is ambiguous as to when Bishop was required to (1) obtain approval for the transfer of ownership by General Motors Corporation, Pontiac, Buick, GMC Trucks Division, and (2) retire or purchase all "notes of other indebtedness outstanding" of the corporation guaranteed by Benson.

Benson argues General Motors' approval of the ownership transfer and his release from corporate indebtedness were required to be accomplished prior to the time Bishop was required to complete the buy-out on February 15, 1987. Conversely, Bishop argues that while the contract makes his purchase of Benson's stock subject to approval of General Motors and the retirement or discharge of Benson's personal liability, there is no requirement in the contract that these conditions must have been met prior to the February 15, 1987, buy-out deadline.

We have little difficulty in finding ambiguity in the contract regarding the intent of the parties as to when these

conditions were to be performed. Thus, a genuine issue of fact existed and it was error for the trial court to grant summary judgment. Paragraph 2 of the agreement can fairly be interpreted to contemplate that the buy-out of Benson's stock which included payment of the purchase price and the securing of all releases and approvals, was to be completed by February 15, 1987.[2] Further, paragraph 4 of the agreement uses the language that Bishop must have *retired* or *purchased* the corporate indebtedness *guaranteed* by Benson *before* the balance of Benson's stock may be purchased. Clearly, the approval by General Motors and the release of Benson's liability were not obtained by Bishop on or before February 15, 1987. Further development of the facts in this case is at least desirable in clarifying application of the law in this difficult contract area of conditions precedent. *See Abrams v. Wright*, 262 S. C. 141, 202 S. E. (2d) 859 (1974).

As an additional sustaining ground, Bishop argues Benson waived the personal liability release and General Motors approval requirements by not claiming these as the basis for rejecting the tender on February 15, 1987. This State has recognized a party's right to waive strict compliance with a condition precedent. *See, e.g., White v. Felkel*, 222 S. C. 313, 72 S. E. (2d) 531 (1952). Ordinarily, however, whether or not a waiver has occurred in a given factual setting is a question of fact for the finder of fact. *Cf. Edwards v. Rouse*, 290 S. C. 449, 351 S. E. (2d) 174 (Ct. App. 1986) (evidence to support waiver of time limits in option contract).

Bishop argues on appeal that Benson's answer contains an admission that the sole basis for refusing the February 12 tender was insufficiency of the amount and the untimeliness of the tender. The language Bishop directs our attention to is paragraph 4 of Benson's answer. Manifestly paragraph 4 responds to paragraph 7 of Bishop's complaint which contains allegations relative to the amount and timeliness of the tender. Interestingly, Bishop alleges in

---

[2] We note in his February 12, 1987, letter Bishop makes the following statement: "I respectfully request that you honor your contract and tender the shares so that I can complete the buy-out by February 15, 1987."

paragraph 9 of his complaint that he has performed all conditions of the contract. This allegation is denied by Benson, thus putting into issue Bishop's failure to perform the contract conditions here dealt with. We thus find no merit to Bishop's contention Benson's pleadings limit his bases for rejecting the tender to inadequacy of amount and untimeliness.

Viewing the meager facts of waiver as reflected in the record, and considering all inferences most strongly against Bishop, we hold there are triable issues of fact concerning whether Benson's conduct amounted to an implied waiver of his right to insist upon performance of the conditions of the contract regarding the release of liability for indebtedness and approval by General Motors of the transfer of ownership of the dealership.

Additionally, Bishop did not raise the issue of waiver before the trial court and it was not passed on by that court. Bishop therefore may not rely on waiver as an additional sustaining ground. *Carter v. Peace*, 229 S. C. 346, 93 S. E. (2d) 113 (1956); *Cobb v. Gross*, 291 S. C. 550, 354 S. E. (2d) 573 (Ct. App. 1987).

We therefore reverse the trial court based upon our view that questions of fact are presented as to when Bishop was required to perform certain requirements in the contract. In so ruling, we need not decide and indeed the facts in the record are insufficient for us to decide whether or not the amount of Bishop's tender satisfied the terms of the contract. The grant of summary judgment is reversed and the case remanded.

Reversed and remanded.

Shaw and Gardner, JJ., concur.