**HARBOUR TOWN YACHT CLUB BOAT SLIP OWNERS' AS-SOCIATION, Plaintiff,**

v.

**SAFE BERTH MANAGEMENT, INC., and Peeples Industries, Inc., Defendants.**

C.A. No. 9:05–CV–0109–23.

United States District Court, D. South Carolina, Beaufort Division.

Feb. 9, 2006.

---

William Meriwether Bowen, Hilton Head, SC, for Plaintiff.

Adriane Malanos Belton, Sean Houseal, Buist Moore Smythe and McGee, Charleston, SC, for Defendants.

## ORDER

DUFFY, District Judge.

This matter is before the court on Plaintiff's motion for summary judgment. The court has reviewed the parties' motions, memoranda, and the relevant portions of the record. Viewing the facts in the light most favorable to Defendant, as the nonmoving party, the court finds that there are genuine issues of material facts in dispute that preclude the entry of summary judgment.

## BACKGROUND

The facts, considered in the light most favorable to Defendant as the non-moving party, are as follows:

On January 31, 2002, Plaintiff Harbour Town Yacht Club Boat Slip Owners' Association ("Harbour Town" or "Plaintiff") and Safe Harbor Sediment Recovery ("Safe Harbor"), a division of Defendant Safe Berth ("Safe Berth" or "Defendant"), entered into a Lease Agreement for Dredging Equipment with Option to Purchase ("Lease Agreement"). Peeples Industries, Inc. ("Peeples") served as guarantor under the Lease Agreement. In the Recitals prefacing this Lease Agreement, the parties stipulated that,

> [w]hereas, [Harbour Town is] a member of South Island Dredging Association ("SIDA"), which is a non-profit corporation ... which seek(s) to have navigable waterways and marinas on Hilton Head Island, South Carolina dredged, in order to restore and maintain navigable water depths at low tides ("The Project"); and whereas, Safe Harbor is intending to enter into a business of dredging waterways and marinas of the type represented by SIDA; and whereas, SIDA expects that it will obtain all necessary dredging and disposal permits for The Project by March 1, 2002, and is entering into an agreement with Safe Harbor pursuant to which Safe Harbor will perform The Project as an independent contractor; and whereas the Parties to this Agreement and SIDA have discussed a plan under which [Harbour Town] will purchase certain equipment required by

Safe Harbor to perform The Project as described in this Agreement, and [Harbour Town] will lease the Equipment to Safe Harbor with an option to purchase as stated below.

All of the above Recitals were "incorporated into the substantive body of the Lease Agreement and purport to be binding on the Parties." (Lease Agreement, ¶ 1.1.) As described in the Recitals, SIDA did contract with Safe Harbor to dredge certain marinas and waterways adjacent to property of its members, including Harbour Town Marina, at which Plaintiff's members own boat slips ("Dredging Agreement").

In accordance with this Dredging Agreement, SIDA acquired the permits and Safe Harbor began dredging activities in early 2003, using the equipment leased from Harbour Town. Shortly thereafter, however, the South Carolina Department of Health and Environmental Control ("DHEC") suspended Safe Berth's dredging operations and issued orders against permittee SIDA for its violation of the DHEC permit authorizing dredging of SIDA's members' marinas and waterways. DHEC thereafter issued a final enforcement order adding Safe Harbor as a co-respondent and ordered SIDA and Safe Harbor to pay civil penalties for permit violations, which both parties contested. Federal authorities have also begun a criminal investigation into the dredging activities of Safe Harbor and SIDA. Witnesses have been subpoenaed to testify at a federal grand jury hearing and it is likely that a federal indictment is forthcoming.

Once dredging activities were forced to cease, Safe Berth stopped making payments under the Lease Agreement. Plaintiff alleges that this failure to pay constitutes a breach of the Lease Agreement and that Peeples has similarly breached its obligations as guarantor. Accordingly, Harbour Town brought suit in the Court of Common Pleas for the Fourteenth Judicial Circuit of the State of South Carolina on November 10, 2004. Defendants removed the action to this court on the basis of diversity jurisdiction on January 13, 2005. Plaintiff now moves for summary judgment.

## STANDARD OF REVIEW

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). The judge is not to weigh the evidence but rather to determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). All evidence should be viewed in the light most favorable to the non-moving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123–24 (4th Cir.1990). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir.1991).

## DISCUSSION

Plaintiff alleges that Defendants' failure to make payments as required by the Lease Agreement is a breach of an unambiguous contract for which Defendants have offered no viable defense. Accordingly, Plaintiff asserts that summary judgment in its favor is appropriate.

■ The construction and enforcement of an unambiguous contract is a question of law for the court, and thus can be properly disposed of at summary judgment. *Lyles v. BMI, Inc.*, 292 S.C. 153, 355 S.E.2d 282 (1987). However, if a contract is ambiguous, or capable of more

than one construction, the question of what the parties intended becomes one of fact, and should therefore be decided by the jury. *Cafe Assoc. Ltd. v. Gerngross,* 305 S.C. 6, 406 S.E.2d 162 (1991). Once a contract is before the court for interpretation, the paramount concern of the court is to give effect to the intention of the parties. *Parker v. Byrd,* 309 S.C. 189, 420 S.E.2d 850 (1992); *Middleborough Horizontal Property Regime Council of Co-Owners v. Montedison S.p.A.,* 320 S.C. 470, 465 S.E.2d 765, 770 (1995); *Columbia East Assoc. v. Bi–Lo, Inc.,* 299 S.C. 515, 386 S.E.2d 259 (1989).

Defendant argues that the Lease Agreement, when read in conjunction with the Dredging Agreement and related permits, evidences an understanding between the parties to form a joint venture to complete The Project. Accordingly, the inability to continue work on The Project excuses Defendant from fulfilling its obligations under the Lease Agreement. At the very least, Defendant argues that the possibility of such an understanding warrants denial of Plaintiff's summary judgment motion. Plaintiff, denying there was ever an understanding of any such joint venture, asserts that the lease unambiguously defines the relationships between the parties and that any parol evidence to the contrary should not be considered.

▮▮▮▮ Under South Carolina law, the parol evidence rule generally excludes evidence which would give a perfectly clear agreement a different meaning or effect than that indicated by the plain language of the agreement. *Taylor by Taylor v. Taylor,* 291 S.C. 261, 353 S.E.2d 156 (1987). Also, if the writing on its face appears to express the whole agreement, parol evidence cannot be admitted to add another term thereto. *Blackwell v. Faucett,* 117 S.C. 60, 108 S.E. 295 (1921). The parol evidence rule is particularly applicable where the writing in question has an integration clause. *U.S. Leasing Corp. v. Janicare, Inc.,* 294 S.C. 312, 364 S.E.2d 202, 205–206 (1988); *see Wilson v. Landstrom,* 281 S.C. 260, 315 S.E.2d 130 (1984) (wherein the court noted that a merger clause expresses the parties' intention that the writing be treated as a complete integration of their agreement and that a completely integrated agreement cannot be varied or contradicted by parol evidence of either a prior or a contemporaneous agreement omitted from the writing). However, "[w]hen the written evidence of the contract does not contain all the terms of the transaction between the parties, parol evidence (not contradicting or varying the writing) is admissible for the purpose of showing a contemporaneous independent agreement entered into between the parties." *Ashe v. Carolina & N.W. Ry. Co.,* 65 S.C. 134, 43 S.E. 393, 394 (1903); *see City of Greenville v. Washington Am. League Baseball Club,* 205 S.C. 495, 32 S.E.2d 777, 781 –782 (1945).

In this case, the Lease Agreement contains no integration clause, makes reference to the proposed Dredging Agreement,[1] and specifies that the purpose of the Agreement is to facilitate the completion of The Project.[2] As such, according

---

1. The court notes that, at the time the parties entered the Lease Agreement (1/31/02), the parties had not yet entered the Dredging Agreement (3/23/02). The fact that the Lease Agreement references agreements to be made in the future further convinces the court that the Lease Agreement does not, and was not meant to, embody the full understanding between the parties.

2. In addition to the Recital, which expresses the parties intention to perform The Project, the Lease Agreement states at ¶ 4.1 that "the Equipment is being purchased by [Harbour Town] for the purpose of leasing it to Safe Harbor *who will use it in the performance of*

to its own terms, the Lease Agreement is not the whole and complete agreement between the parties. Accordingly, because the court finds that the Lease Agreement is not a complete integration of the parties' understanding, parol evidence (not contradicting or varying the writing) is admissible for the purpose of showing a contemporaneous independent agreement entered into between the parties.

The court therefore considers whether Defendants may introduce evidence that the parties intended the Lease Agreement to be contingent upon the Defendant's ability to dredge The Project. Evidence of this intent is only admissible if it does not contradict or vary the express terms of the writing. At only one point does the Lease Agreement consider the consequence of Defendant's not working on The Project: "It is contemplated that Safe Harbor and SIDA will enter into a contract for Safe Harbor to dredge the Project. Should this not occur: (i) the Rent, as provided herein, shall not commence until August 2003 ("Delayed Rent")." (Lease Agreement, ¶ 3.3.) This provision does not specify, however, the parties' intent should Safe Harbor and SIDA enter into a contract to dredge The Project, but then be unable to complete the dredging due to other difficulties. As such, because the Lease Agreement is both (1) incomplete, and (2) does not address the possibility that the dredging of The Project may be halted, the court finds that Defendant may introduce evidence of what the parties' intended to occur at that point.

To this end, Defendant presents evidence that Harbour Town and Safe Berth considered the dredging of The Project to be a venture in which both parties had an economic stake in completing. (Gerwing Deposition, at 55.) Defendant introduces the sworn statement of Daryn Beringer, Vice President of Safe Berth. Beringer testifies that "the Lease Agreement and contemporaneous Dredging Agreement was the start of what all parties expected to be a successful joint venture that would provide long-term maintenance dredging for all of SIDA's members, including, and most importantly, Plaintiff." (Beringer Statement, ¶ 35.) Defendant also points to the minutes of a Harbour Town Board of Director's meeting held prior to the formation of the Lease Agreement. Within these minutes, Plaintiff's Board of Directors discuss the "pros and cons of the proposed dredge acquisition, the joint venture, the leaseback arrangement . . . and other related areas of concern." (Minutes of Sept. 4, 2001, at 2.) While none of this evidence constitutes a separate, binding agreement, it does call into question the intent of the parties and the nature of the relationship between the parties, The Project, and the Lease Agreement.

■ Considering the central importance of The Project to the Lease Agreement, the Lease Agreement's failure to account for the possibility that The Project would be halted, and the importance of The Project as an impetus for the parties' entering of the Lease Agreement, the court cannot say that the Lease Agreement unambiguously requires the parties to continue to perform should the dredging of The Project cease. This ambiguity within the

---

services for the benefit of [Harbour Town] and others." Again, at ¶ 7.1, the Agreement states that "Safe Harbor may use the Equipment for the performance of dredging projects as it determines, so long as Safe Harbor is actively engaged as the principal dredging contractor and is the manager and supervisor of that project, *similar to Safe Harbor's duties under the attached contemporaneous Agreement with [Harbour Town]."* These provisions lead the court to conclude that the Lease Agreement is meant to be considered in conjunction with the parties' other agreements relating to The Project.

Lease Agreement is enough to create a legitimate dispute as to material facts. "Summary judgment should not be granted even when there is no dispute as to the evidentiary facts if there is dispute as to the conclusions to be drawn from those facts." *Piedmont Engineers, Architects and Planners, Inc. v. First Hartford Realty Corp.,* 278 S.C. 195, 293 S.E.2d 706, 707 (1982). This court need not decide that it favors Safe Berth or Harbour Town's view of the contract at this juncture; the court need only opine that the contract is ambiguous. *See Bishop v. Benson,* 297 S.C. 14, 374 S.E.2d 517 (1988) (summary judgment improper on a construction of contract issue where the intention of the parties as to the meaning of the contract may not be gathered from the four corners of the instrument).

In this case, the court finds that the Lease Agreement is ambiguous as to whether the obligations imposed therein are contingent upon the continued dredging of The Project. Where a contract is ambiguous, the question of what the parties intended becomes one of fact, and should therefore be decided by the jury. *Cafe Assoc. Ltd.,* 406 S.E.2d at 162. Therefore, the court holds that the granting of summary judgment in favor of Plaintiff would be improper. *See Gilliland v. Elmwood Properties,* 301 S.C. 295, 391 S.E.2d 577, 579–580 (1990).

### CONCLUSION

It is, therefore,

**ORDERED,** for the foregoing reasons, that Plaintiff's Motion for Summary Judgment is **DENIED.**

**AND IT IS SO ORDERED.**